## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Sunflower Electric Power Corporation,    )
                          )
             *Petitioner*,    )
                          )
       v.                    )   Case No. _23-1264_
                          )
Federal Energy Regulatory        )
Commission,                  )
                          )
           *Respondent*.    )

## PETITION FOR REVIEW OF
## SUNFLOWER ELECTRIC POWER CORPORATION

Pursuant to Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), and

Rule 15(a) of the Federal Rules of Appellate Procedure, Sunflower Electric Power

Corporation ("Sunflower") hereby petitions this Court for judicial review of the

following Order and Notice issued by the Federal Energy Regulatory Commission

("Commission"):

1. *Southwest Power Pool, Inc.*, Docket Nos. ER22-1846-002 and ER22-1846-003, "Order Setting Aside Prior Order and Dismissing Compliance Filing" (July 13, 2023) ("Order"); and

2. *Southwest Power Pool, Inc.*, Docket No. ER22-1846-004, "Notice of Denial of Rehearing By Operation of Law and Providing for Further Consideration" (Sept. 14, 2023) ("Notice").

Sunflower operates as a generation and transmission company located in

Central and Western Kansas. Sunflower is a member-owned corporation operated

on a non-profit, cooperative basis by six rural electric distribution cooperatives. Sunflower also serves at wholesale, directly or indirectly, nine small cities. Sunflower is a generation owner and also is a transmission-owning member ("Transmission Owner") within the Southwest Power Pool, Inc. ("Southwest Power Pool") region. As a Southwest Power Pool Transmission Owner, the rates and charges approved by Southwest Power Pool comprise a portion of the costs allocated to Sunflower, and by extension, to Sunflower's customers.

Sunflower is a party to the underlying proceedings before the Commission resulting in the issuance of the foregoing Order and Notice. Sunflower is aggrieved by the Commission's actions in the underlying proceedings, in which the Commission reversed its prior order accepting Southwest Power Pool's revisions to its Open Access Transmission Tariff ("Tariff") to establish a cost allocation waiver process that would allow entities to request (i) that the remaining costs of one or more specific prior transmission projects between 100 kV and 300 kV ("Byway Facility(ies)") be fully allocated prospectively on a region-wide basis, and (ii) that the costs of a new or upgraded Byway Facility assigned to a Transmission Owner as a result of a Southwest Power Pool planning process be fully allocated on a region-wide basis. As noted in Sunflower's pleadings submitted in the underlying proceedings, Southwest Power Pool's Tariff revisions resulted from a robust stakeholder process (in which Sunflower participated) and included important

reforms to the Byway Facility cost allocation waiver process. Despite initially accepting Southwest Power Pool's Tariff revisions on October 28, 2022, subject to condition, the Commission's subsequent Order reversed that decision and set aside the October 28, 2022 order, rejected Southwest Power Pool's Tariff revisions, and dismissed its compliance filing as moot.

On August 14, 2023, Sunflower timely requested rehearing of the Commission's Order. On September 14, 2023, the Commission issued the foregoing Notice, stating that it would address Sunflower's request for rehearing in a future order consistent with the requirements of 16 U.S.C. § 825*l*(a). However, pursuant to 16 U.S.C. § 825*l*(a), "[u]nless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed denied." The Commission did not issue an order by the thirty-day deadline, and therefore Sunflower's request for rehearing may be deemed denied and is ripe for review by this Court. Sunflower notes that the Commission's prior actions in the underlying proceedings, including the October 28, 2022 order, are currently pending judicial review before this Court in D.C. Circuit Case Nos. 23-1054, *et al.*, to which Sunflower is a party.

A copy of the Commission's Order and Notice is attached hereto as Exhibits A and B, respectively. Also attached to this Petition for Review are: (1) the Corporate Disclosure Statement required by Rule 26.1 of the Federal Rules of

Appellate Procedure; and (2) a Certificate of Service, with the list of parties to the underlying proceeding.

Respectfully submitted,

*/s/ Adrienne E. Clair*
Adrienne E. Clair
Jecoliah R. Williams
Griffin C. Rice
Thompson Coburn LLP
1909 K Street N.W., Suite 600
Washington, D.C. 20006
(202) 585-6900
(202) 585-6969 (fax)
aclair@thompsoncoburn.com
jwilliams@thompsoncoburn.com
grice@thompsoncoburn.com

*Counsel for Sunflower Electric Power Corporation*

Dated: September 15, 2023

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| Sunflower Electric Power Corporation, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No. 23-1264 |
| | ) | |
| Federal Energy Regulatory | ) | |
| Commission, | ) | |
| | ) | |
| *Respondent*. | ) | |

**CORPORATE DISCLOSURE STATEMENT OF
SUNFLOWER ELECTRIC POWER CORPORATION**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, Sunflower Electric Power Corporation ("Sunflower") hereby submits this Corporate Disclosure Statement in the above-captioned proceeding.

Sunflower is a not-for-profit power supply electric cooperative to which Rule 26.1 does not apply. *See* Fed. R. App. P. 26.1(a).

Respectfully submitted,


/s/ Adrienne E. Clair
Adrienne E. Clair
Jecoliah R. Williams
Griffin C. Rice
Thompson Coburn LLP
1909 K Street N.W., Suite 600
Washington, D.C. 20006
(202) 585-6900
(202) 585-6969 (fax)
aclair@thompsoncoburn.com
jwilliams@thompsoncoburn.com
grice@thompsoncoburn.com

*Counsel for Sunflower Electric Power Corporation*


Dated: September 15, 2023

# CERTIFICATE OF SERVICE

Pursuant to Rule 15(c) of the Federal Rules of Appellate Procedure, I hereby certify that I have this 15th day of September, 2023, caused to be served copies of the foregoing Petition for Review and Corporate Disclosure Statement by first class mail, postage prepaid to:

> Ms. Kimberly D. Bose, Secretary
> Federal Energy Regulatory Commission
> 888 First Street, N.E.
> Washington, D.C.  20426
>
> Robert Solomon, Solicitor
> Federal Energy Regulatory Commission
> 888 First Street, N.E.
> Washington, D.C. 20426

and by email on all parties on the Commission's service list in the underlying proceeding in Docket No. ER22-1846-000, attached hereto.

*/s/ Adrienne E. Clair*
Adrienne E. Clair

Service List for ER22-1846-000, *Southwest Power Pool, Inc.*

Contacts marked ** must be postal served

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| Ameren Services Company | Matthew Tomc<br>Director and Assistant General<br>Ameren Corporation<br>1901 Chouteau Ave<br>MC 1310<br>St. Louis, MISSOURI 63040<br>UNITED STATES<br>mtomc@ameren.com | Denice Simpson<br>Regulatory Affairs Specialist<br>Ameren Corporation<br>1331 Pennsylvania Ave, NW<br>Suite 550 South<br>Washington, DISTRICT OF<br>COLUMBIA 20004<br>dsimpson@ameren.com |
| American Electric Power Service Corporation | Stacey Burbure<br>American Electric Power Company<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF<br>COLUMBIA 20004<br>UNITED STATES<br>slburbure@aep.com | LaChon Turner<br>AEP COMPANIES<br>801 Pennsylvania, Avenue, NW<br>Suite 735<br>Washington, DISTRICT OF<br>COLUMBIA 20004-2615<br>lturner@aep.com |
| American Electric Power Service Corporation | Mary-Kate Rigney<br>301 S COLLEGE ST<br>STE 3400<br>CHARLOTTE, NORTH<br>CAROLINA 28202<br>UNITED STATES<br>mary-kate.rigney@troutman.com | Christopher Jones<br>Partner<br>401 9TH ST NW STE 1000<br>WASHINGTON, DISTRICT OF<br>COLUMBIA 20004<br>chris.jones@troutman.com |
| American Electric Power Service Corporation | Stacey Burbure<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF<br>COLUMBIA 20004<br>UNITED STATES<br>slburbure@aep.com | |
| Arkansas Electric Cooperative Corporation | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF<br>COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |

| | | |
|---|---|---|
| Basin Electric Power Cooperative | Jesse Halpern<br>Thompson Coburn LLP<br>1909 K St NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>jhalpern@thompsoncoburn.com | Nicole S Allen<br>Partner<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>nallen@thompsoncoburn.com |
| Basin Electric Power Cooperative | | Mike Kraft<br>Basin Electric Power Cooperative<br>1717 E Interstate Ave<br>Bismarck, NORTH DAKOTA 58503<br>mkraft@bepc.com |
| Basin Electric Power Cooperative | | Matthew R Kolling<br>Senior Staff Counsel<br>Basin Electric Power Cooperative<br>1717 E INTERSTATE AVE<br>BISMARCK, NORTH DAKOTA 58503<br>mkolling@bepc.com |
| Basin Electric Power Cooperative | | Jeremy Voll<br>Electrical Engineer III<br>Basin Electric Power Cooperative<br>1717 E INTERSTATE AVE<br>BISMARCK, NORTH DAKOTA 58503<br>jvoll@bepc.com |
| City Utilities of Springfield, Missouri | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | Patrick Smith<br>Corporate Counsel<br>Evergy, Inc.<br>818 S KANSAS AVE<br>TOPEKA, KANSAS 66612<br>UNITED STATES<br>Patrick.Smith@evergy.com | Denise M Buffington<br>Sr Dir Federal Regulatory Affa<br>Kansas City Power & Light Company<br>PO Box 418679<br>Kansas City,KANSAS 64141-9879<br>Denise.Buffington@evergy.com |

| | | |
|---|---|---|
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | | James Flucke<br>Manager, Federal Regulatory Af<br>1200 Main<br>Kansas City, MISSOURI 64105<br>jim.flucke@evergy.com |
| ITC Great Plains, LLC | James Bixby<br>Counsel - Regulatory & Legisla<br>ITC Holdings Corp.<br>601 13th St NW<br>Suite 710S<br>RTS-RETURN TO SENDER<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>jbixby@itctransco.com | |
| Kansas City, Kansas Board of Public Utilities | Ashley Bond<br>Duncan & Allen LLP<br>Duncan & Allen LLP<br>1730 RHODE ISLAND AVE NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>amb@duncanallen.com | Maurice L Moss<br>mmoss@bpu.com |
| Kansas City, Kansas, Board of Public Utilities | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |
| Kansas Corporation Commission | Carly Masenthin<br>Litigation Counsel<br>Kansas Corporation Commission<br>1500 SW ARROWHEAD RD<br>TOPEKA, KANSAS 66604<br>UNITED STATES<br>c.masenthin@kcc.ks.gov | |

| | | |
|---|---|---|
| Kansas Electric Power Cooperative, Inc. | Susan Cunningham<br>SVP & General Counsel<br>Kansas Electric Power Cooperative, Inc.<br>600 SW Corporate View<br>Topeka, KANSAS 66615<br>UNITED STATES<br>scunningham@kepco.org | Mark F Doljac<br>Executive Director, Regulatory<br>Kansas Electric Power Cooperative, Inc.<br>600 SW CORPORATE VW<br>TOPEKA, KANSAS 66615<br>mdoljac@kepco.org |
| Kansas Electric Power Cooperative, Inc. | | Rebecca A Fowler<br>Manager Regulatory Affairs<br>600 S.W. Corporate View<br>Topeka, KANSAS 66615<br>rfowler@kepco.org |
| Midwest Energy, Inc | Richard Lorenzo<br>LOEB & LOEB<br>901 New York Ave., NW<br>Suite 300 East<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>rlorenzo@loeb.com | Nicole Ayn Travers, ESQ<br>Associate<br>LOEB & LOEB<br>900 New York Avenue NW<br>Suite 300 E<br>Washington, DISTRICT OF COLUMBIA 20001<br>ntravers@loeb.com |
| Midwest Energy, Inc | William Dowling<br>V.P. Energy Mgmt<br>Midwest Energy, Inc.<br>1330 CANTERBURY DR<br>HAYS, KANSAS 67601<br>UNITED STATES<br>bdowling@mwenergy.com | |
| Missouri Joint Municipal Electric Utility Commission | Heather Starnes<br>Attorney<br>Healy Law Offices, LLC<br>12 PERDIDO CIR<br>LITTLE ROCK, ARKANSAS 72211<br>UNITED STATES<br>heather@healylawoffices.com | |
| Missouri Joint Municipal Electric Utility Commission | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |

| | | |
|---|---|---|
| Oklahoma Gas & Electric Company | DeAnn Aderholt<br>Oklahoma Gas and Electric Company<br>321 N. Harvey<br>P.O. Box 321 M/C 1208<br>Oklahoma City, OKLAHOMA 73101<br>UNITED STATES<br>aderhodm@oge.com | Amanda Reyes<br>reyesar@oge.com |
| Oklahoma Gas & Electric Company | William Sultemeier<br>General Counsel and Chief Comp<br>OGE Energy Corp.<br>321 N Harvey Avenue<br>Oklahoma City, OKLAHOMA 73102<br>UNITED STATES<br>sultemwh@oge.com | |
| Public Utility Commission of Texas | Debra Roby<br>Partner<br>Washington Energy Law LLP<br>900 17TH ST NW STE 500-A<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>droby@washingtonenergylaw.com | Stephen D. Journeay<br>Director, Commission Advising<br>Texas Public Utility Commission<br>1701 N. Congress Ave.<br>Austin, TEXAS 78701<br>stephen.journeay@puc.texas.gov |
| Public Utility Commission of Texas | Alan Robbins<br>Partner<br>Washington Energy Law LLP<br>900 17TH ST NW STE 500-A<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>arobbins@washingtonenergylaw.com | |
| Southwest Power Pool, Inc. | Justin Hinton<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72212<br>UNITED STATES<br>jhinton@spp.org | Nicole Wagner<br>Manager-Regulatory Policy<br>Southwest Power Pool Inc.<br>201 WORTHEN DR<br>LITTLE ROCK, ARKANSAS 72223<br>jwagner@spp.org |

| | | |
|---|---|---|
| Southwest Power Pool, Inc. | | Michelle L Harris<br>Senior Paralegal<br>Southwest Power Pool Inc.<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72223-4936<br>mharris@spp.org |
| Southwest Transmission, LLC | Christina Switzer<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>cswitzer@efenergylaw.com | Michael R Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20006<br>mengleman@efenergylaw.com |
| Southwest Transmission, LLC | | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Southwest Transmission, LLC | | Brenda Prokop<br>bprokop@lspower.com |
| Sunflower Electric Power Corporation | | Jecoliah R Williams<br>Associate Attorney<br>Thompson Coburn LLP<br>1909 K ST NW STE 600<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>jwilliams@thompsoncoburn.com |
| Sunflower Electric Power Corporation | | Al Tamimi<br>VP Transmission Planning and P<br>SUNFLOWER ELECTRIC COOP INC (KS)<br>425 S 119TH ST W<br>WICHITA, KANSAS 67235<br>atamimi@sunflower.net |

| | | |
|---|---|---|
| Sunflower Electric Power Corporation | | Ray Bergmeier<br>rbergmeier@sunflower.net |
| The Empire District Electric Company | Elizabeth Whittle<br>Partner<br>Nixon Peabody LLP<br>799 9TH ST NW STE 500<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>ewhittle@nixonpeabody.com | Sarah B. Knowlton, ESQ<br>General Counsel<br>116 N MAIN ST<br>CONCORD, NEW HAMPSHIRE 03301<br>sarah.knowlton@libertyutilities.com |
| The Empire District Electric Company | | Aaron Doll<br>Senior Director<br>Liberty Utilities<br>602 S Joplin Avenue<br>Joplin, MISSOURI 64801<br>aaron.doll@libertyutilities.com |
| Washington Energy Law LLP | Thomas Steiger<br>Associate<br>900 17TH ST NW STE NW STE 500-A<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tsteiger@washingtonenergylaw.com | |
| Western Area Power Administration | Gary Hoffman<br>Attorney<br>Western Area Power Administration<br>PO Box 281231<br>Lakewood,COLORADO 80228-8231<br>UNITED STATES<br>ghoffman@wapa.gov | Steven Sanders<br>Operations & Transmission Advi<br>Western Area Power Administration<br>2900 4th Ave North, Room 600<br>Billings, MONTANA 59102<br>sanders@wapa.gov |
| Xcel Energy Services Inc. | bernard liu<br>Sr. Trans. Tariff Consultant<br>414 Nicollet Mall Fl 7<br>Minneapolis, MINNESOTA 55401<br>UNITED STATES<br>bernard.liu@xcelenergy.com | |

# Exhibit A

184 FERC ¶ 61,028
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Acting Chairman;
James P. Danly, Allison Clements,
and Mark C. Christie.

| | |
|---|---|
| Southwest Power Pool, Inc. | Docket Nos. ER22-1846-002 |
| | ER22-1846-003 |

ORDER SETTING ASIDE PRIOR ORDER AND DISMISSING COMPLIANCE
FILING

(Issued July 13, 2023)

1.      On May 10, 2022, pursuant to section 205 of the Federal Power Act (FPA)[1] and section 35.13 of the Commission's regulations,[2] Southwest Power Pool, Inc. (SPP) submitted proposed revisions to Attachment J (Recovery of Costs Associated with New Facilities) of its Open Access Transmission Tariff (Tariff) to establish a process through which, on a case-by-case basis, all of the costs of a transmission facility with a voltage level between 100 kV and 300 kV (Byway facility) can be allocated on a regional, postage-stamp basis.  In an order issued October 28, 2022, the Commission accepted SPP's proposed Tariff revisions, subject to condition, effective August 1, 2022, as requested, and directed SPP to submit a compliance filing.[3]

2.      On November 28, 2022, Indicated Transmission Owners[4] and Indicated Utilities[5] timely filed requests for rehearing of the Tariff Order.  Pursuant to *Allegheny Defense*

---

[1] 16 U.S.C. § 824d.

[2] 18 C.F.R. § 35.13 (2022).

[3] *Sw. Power Pool, Inc.*, 181 FERC ¶ 61,076 (2022) (Tariff Order).

[4] Indicated Transmission Owners consist of Southwestern Electric Power Company, Public Service Company of Oklahoma, Southwestern Public Service Company, and Oklahoma Gas & Electric Company.

[5] Indicated Utilities consist of City Utilities of Springfield, Missouri, Kansas City Board of Public Utilities, and Missouri Joint Municipal Electric Utility Commission.

*Project v. FERC*,[6] the rehearing requests filed in this proceeding may be deemed denied by operation of law. However, as permitted by section 313(a) of the FPA,[7] we are modifying the discussion in and setting aside the Tariff Order, and rejecting SPP's proposal without prejudice, as discussed below.[8]

3.     On November 16, 2022, in Docket No. ER22-1846-002, SPP submitted a compliance filing in response to the Tariff Order (Compliance Filing). Because we are setting aside the Tariff Order and rejecting SPP's filing without prejudice, we dismiss the Compliance Filing as moot.

## I.     Background

4.     In 2010, the Commission accepted SPP's proposal to implement its Highway/Byway cost allocation method (Highway/Byway),[9] under which SPP allocates the costs of transmission facilities on a voltage threshold basis.[10] For transmission facilities at 300 kV or above (Highway facilities), SPP allocates 100% of the costs on a regional, postage-stamp basis.[11] For Byway facilities (those that are between 100 kV and 300 kV), SPP allocates 33% of the costs on a regional, postage-stamp basis and 67% of

---

[6] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

[7] 16 U.S.C. § 825*l*(a) ("Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.").

[8] *Allegheny Def. Project*, 964 F.3d at 16-17.

[9] *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252 (2010) (Highway/Byway Order), *reh'g denied*, 137 FERC ¶ 61,075 (2011).

[10] Generally, Highway/Byway cost allocation applies to new transmission facilities included in and constructed pursuant to SPP's Transmission Expansion Plan to ensure the reliability of SPP's transmission system, certain other qualifying network upgrades, and high priority upgrades. SPP, Tariff, attach. J, § III. (12.1.0) § III.A.2.

[11] The Commission has explained that "postage-stamp" "refers to regionwide allocation of the cost of a transmission facility." *Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051, at P 741 n.543 (2011), *order on reh'g*, Order No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g & clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014).

the costs to the SPP pricing zone in which the facilities are located.  For transmission facilities at or below 100 kV, SPP allocates 100% of the costs to the zone in which the facilities are located.[12]

5.       In its order accepting the Highway/Byway cost allocation method, the Commission also accepted SPP's revisions to its unintended consequences review process, which is now known as the Regional Cost Allocation Review (RCAR) process.[13] The RCAR process requires review of the Highway/Byway cost allocation method and allocation factors at least every six years.  During the RCAR process, SPP will determine cost allocation impacts in each SPP pricing zone.  Any changes to the regional cost allocation method must be filed with the Commission.[14]

6.       In 2021, SPP filed a proposal to establish a process through which entities could petition the SPP Board of Directors (SPP Board) to approve, on a case-by-case basis: (1) the prospective reallocation of costs of certain existing Byway facilities; or (2) the full allocation of costs of certain new Byway facilities so that they would be allocated as Highway facilities (i.e., 100% regionally).  The Commission rejected SPP's proposal, finding that it would grant the SPP Board too much discretion in allocating the costs of Byway facilities without clear standards for how its cost allocation decisions would be made.[15]  The Commission stated that the proposed Tariff language did not contain objective standards, criteria, or thresholds for the SPP Board's decision, and that without clear criteria, the SPP Board would have "too much discretion to make decisions with significant cost and rate implications, without assurance that the cost allocation decisions will result in rates that are just and reasonable and not unduly discriminatory or preferential."[16]  Additionally, the Commission found that the proposal lacked transparency because the Tariff provisions did not indicate that SPP would document and provide an explanation about how the SPP Board would evaluate applicants' information

---

[12] SPP, Tariff, attach. J, § III.A.2.i.  For network upgrades associated with designated resources that are wind generation resources where the upgrade is located in a different zone than the point of delivery, the costs of facilities 300 kV and above are allocated 100% to the region and the costs of facilities below 300 kV are allocated 67% to the region and 33% to the transmission customer.  *Id.* §§ III.A.3, III.A.4.

[13] Highway/Byway Order, 131 FERC ¶ 61,252 at P 83.

[14] SPP, Tariff, attach. J, § III.D.

[15] *Sw. Power Pool, Inc.*, 175 FERC ¶ 61,198, at PP 38-39 (2021) (Rejection Order).

[16] *Id.* P 39.

and reach conclusions about whether to approve a request.[17]  The Commission also distinguished the proposal from SPP's Transformer Waiver Process, finding that the number of facilities and amount of costs eligible for waivers under the proposal would be notably more expansive.[18]

## II.     SPP Filing

7.      On May 10, 2022, SPP submitted proposed revisions to its Tariff to establish a process through which, on a case-by-case basis, the costs of Byway facilities can be fully allocated to the SPP region, with a requested effective date of August 1, 2022.[19]  In support of its proposed Tariff revisions, SPP stated that, in recent years, there had been a significant increase in wind generation throughout the SPP region.[20]

8.      SPP explained that, unlike traditional generation sources (i.e., gas or coal), renewable generation in SPP is generally not located close to the load it serves, but rather is remotely located where wind energy resources are abundant.  SPP claimed that the increase of renewable generation in the region had resulted in some SPP pricing zones having nameplate wind generation capacity in excess of 200% of the peak load inside the zone.  SPP explained that this discrepancy in capacity versus demand in these zones contributed to increased loading on both Highway and Byway facilities inside these zones.[21]  In addition, SPP argued that zones with an abundance of wind generation in comparison to demand can result in misalignment between the costs of transmission assets versus the benefits received from those transmission assets.[22]

---

[17] *Id.* P 40.

[18] *Id.* P 41.

[19] SPP Transmittal at 1.

[20] *Id.* at 9-10.

[21] *Id.* at 10-11.

[22] *Id.* at 11-12 & fig. 3.  SPP explained that in 2011, for example, Sunflower Electric Power Corporation's (Sunflower) pricing zone had 550 MW of wind capacity with a 12-coincident peak (CP) load of 900 MW, and in 2021, Sunflower had 3,100 MW of wind capacity with still only a 12-CP load of 900 MW.  SPP asserted that, along with the increase in wind generation in Sunflower's pricing zone since 2011, the zone had also seen an increase in Schedule 11 (Base Plan Zonal Charge and Region Wide Charge) costs from the Byway facilities being built.  SPP stated that because 67% of the Byway facilities' cost was allocated to the local zone, load in Sunflower's pricing zone was in some cases paying 67% of the cost for Byway facilities primarily used for exporting wind

9.      To address these concerns, SPP proposed to establish a cost allocation waiver process for Byway facilities, where an entity may submit a request for the costs of a specific Byway facility to be regionally allocated.  Under this proposal, if the SPP Board approves such a request, a Byway facility's costs would be allocated prospectively 100% to the SPP region on a postage-stamp basis.

10.     SPP's proposed Tariff revisions specify that to be eligible for 100% regional, postage-stamp cost allocation under the proposed process, an entity must submit a written request to SPP, along with supporting information and analysis, and must satisfy a Capacity Criterion, Flow Criterion, and Benefit Criterion.  To meet the Capacity Criterion, an applicant must show that the total nameplate capacity of generating resources that are physically connected in the zone where the Byway facility is located (and that are not affiliated with load in that zone) exceeds 100% of the prior calendar year's average 12-CP resident load used in calculating the base plan zonal load ratio share for the zone.[23]  To meet the Flow Criterion, an applicant must show that the energy flow on each Byway facility that is attributed to generating resources physically connected in the zone where the Byway facility is located and that are not affiliated with load in that zone exceeds 70% of the sum of flows on the Byway facility attributed to: (1) generating resources affiliated with the load in the zone where the Byway facility is located; and (2) generating resources that are physically connected in the zone and not affiliated with load in the zone.[24]  Lastly, to meet the Benefit Criterion, an applicant must show that the Byway facility for which it is requesting 100% regional, postage-stamp cost allocation provides benefits to load outside the pricing zone where the Byway facility is located.  Benefits may be quantified in terms of adjusted production cost savings or savings through the Integrated Marketplace.  Sufficient benefit to load outside the pricing zone is demonstrated if the benefit exceeds either:  (1) 50% of the Byway facility's projected total benefit to load in the SPP region; or (2) the portion of the Byway facility's annual revenue requirement projected to be borne by load outside the Byway facility's zone under 100% regional, postage-stamp cost allocation.[25]

11.     The Tariff revisions specified that entities may submit a request for waiver of the Highway/Byway cost allocation method for a Byway facility within 180 days after SPP

---

generation to other zones rather than primarily supporting local load.  SPP contended that in such cases allocating 67% of the cost of an upgrade to the local zone may not be roughly commensurate with the benefits received and thus it may be more appropriate that the costs of such upgrades be allocated regionally.  *See id.*

[23] SPP, Proposed Tariff, attach. J, § III. (13.1.0) § III.E.2.a.

[24] *Id.* § III.E.2.b.

[25] *Id.* § III.E.2.c.

issues the Byway facility's notice to construct or, for existing Byway facilities, within 180 days after August 1, 2022, the requested effective date of the proposed Tariff revisions.[26]  Upon receipt of such a request, SPP will post a copy of the request on its website.  Within 90 days of receiving a request, SPP will provide a written recommendation and rationale regarding the approval or denial of the request to SPP's Cost Allocation Working Group, Regional State Committee, Members Committee, and the SPP Board.  Within 30 days of SPP's written recommendation, any interested party may submit comments to the Cost Allocation Working Group, Regional State Committee, Members Committee, and the SPP Board.  At least 30 days after the comment deadline, the Cost Allocation Working Group will vote at its next monthly meeting to recommend approval or denial of the request and will provide its recommendation to the Regional State Committee at the Regional State Committee's next quarterly meeting.  At that meeting, the Regional State Committee will vote to recommend approval or denial of the request and provide such recommendation to the Members Committee and the SPP Board.

12.     At the first SPP Board and Members Committee meeting following the Regional State Committee's vote, the Regional State Committee will present its recommendation regarding the request to the SPP Board and Members Committee, and any entity that submitted comments during the comment period may present its recommendation and rationale for approval or denial of the request to the SPP Board and Members Committee. The SPP Board will then vote to approve or deny the request.[27]  If the SPP Board approves the request, 100% of the annual transmission revenue requirement associated with that Byway facility's costs eligible for cost allocation shall be allocated prospectively to the SPP region on a postage-stamp basis.[28]  For an existing Byway facility, the revised cost allocation will become effective on the first day of the calendar month following the SPP Board's approval of the request.[29]

---

[26] *Id.* § III.E.3.

[27] *Id.* § III.E.5.

[28] *Id.* § III.E.1.

[29] *Id.* § III.E.6.

13.    SPP stated that its proposal is similar in design to the existing Base Plan Upgrade Waiver Process[30] and the Transformer Waiver Process.[31]  SPP noted that in the Commission's acceptance of the Base Plan Waiver Upgrade Process, the Commission stated that SPP must have some degree of flexibility in making cost allocation determinations and did not find that the Base Plan Waiver Upgrade Process gave the SPP Board too much discretion.[32]

14.    SPP claimed that its proposal addressed the deficiencies identified by the Commission in the Rejection Order.[33]  SPP asserted that the three criteria that an applicant must satisfy to be eligible for the cost allocation waiver provide clear, objective standards for the SPP Board.[34]  SPP maintained that the proposed process ensures that the SPP Board has limited discretion in allocating Byway facility costs prospectively to the entire region on a postage-stamp basis.[35]  Additionally, SPP argued that the proposed process is transparent, as it:  (1) provides an opportunity for stakeholders to review and comment on requests; and (2) documents and provides explanation about how SPP staff,

---

[30] Under the Base Plan Upgrade Waiver Process, transmission customers may seek waiver so that costs for network upgrades identified under SPP's Aggregate Transmission Service Study process, SPP's process for evaluating long-term transmission service requests, may be classified as Base Plan Upgrade costs for the purpose of cost allocation instead of being directly assigned to the transmission customer.  SPP Tariff, attach. J, § III.C.

[31] SPP Transmittal at 25 (citing SPP, Tariff, attach. J, § III).  Under the Transformer Waiver Process, entities developing a dual-voltage transformer could seek a waiver from the SPP Board of the standard Highway/Byway cost allocation, under which the costs of a dual-voltage transformer are allocated based on the lower voltage level. Based on the anticipated utilization of the transformer, the entity may seek waiver to allocate the costs of the transformer based on the transformer's higher voltage level instead of the lower voltage level.  SPP, Tariff, attach. J, § III; *Sw. Power Pool, Inc.*, 132 FERC ¶ 61,042, at PP 17, 87 (2010), *order denying reh'g and granting clarification*, 136 FERC ¶ 61,050 (2011); *see also Sw. Power Pool, Inc.*, Docket No. ER10-2244-000, at 1 (Feb. 2, 2011) (delegated order).

[32] SPP Transmittal at 25 (citing *Sw. Power Pool, Inc.*, 111 FERC ¶ 61,118, at P 57 (2005); *Sw. Power Pool, Inc.*, 132 FERC ¶ 61,042 at PP 86-88).

[33] *Id.* at 14.

[34] *Id.* at 16.

[35] *Id.* at 26.

committees, and the SPP Board review the information provided by applicants and stakeholders and reach a conclusion about each request.[36]

15.     On July 28, 2022, Commission staff issued a letter in Docket No. ER22-1846-000 informing SPP that its filing was deficient and requesting additional information (Deficiency Letter).  On August 29, 2022, SPP filed in Docket No. ER22-1846-001 its response to the Deficiency Letter (Deficiency Response).  In response to Commission staff's questions regarding the basis upon which the SPP Board would approve or deny a cost allocation waiver request, SPP stated that, pursuant to its bylaws, "the SPP Board's votes must be held by secret ballot," but that "the SPP Board will base its decision only on whether the Capacity, Flow, and Benefit Criteria are satisfied and shall not consider other factors."[37]

## III.     **Tariff Order**

16.     The Commission in the Tariff Order accepted SPP's proposed Tariff revisions, subject to condition, effective August 1, 2022, and directed SPP to submit a compliance filing.  The Commission found that SPP's proposal to establish a process through which, on a case-by-case basis, the costs of Byway facilities can be fully allocated to the SPP region on a postage-stamp basis is just and reasonable and not unduly discriminatory or preferential because it will help ensure that the costs of Byway facilities are allocated in a manner that is at least roughly commensurate with estimated benefits, consistent with the cost causation principle.[38]  Moreover, the Commission found that allocating 100% of a Byway facility's costs to the SPP region on a postage-stamp basis if the facility is shown to provide significant benefits to zones other than the zone in which the Byway facility is located will better align the allocation of the costs of the Byway facility with its beneficiaries.[39]

17.     The Commission disagreed with protesters' arguments that the three criteria used to evaluate requests to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region are inappropriate and insufficiently justified.  The Commission found that the Capacity Criterion is a reasonable measure of whether transmission facilities in the zone are being used to serve load in other zones.  The Commission found that the Flow Criterion is a reasonable measure of whether the transmission facilities are

---

[36] *Id.* at 20.

[37] *See* Tariff Order, 181 FERC ¶ 61,076 at P 36 (citing Deficiency Response at 7-9).

[38] *Id.* PP 47-48.

[39] *Id.* P 48.

used to support energy flows to other zones.  The Commission found that the Benefit Criterion is a reasonable measure of whether the Byway facility provides regional benefits.[40]

18.     The Commission found that it is reasonable for SPP to analyze benefits under the Benefit Criterion based on adjusted production cost savings and/or savings through the Integrated Marketplace due to the Commission's prior acceptance of cost allocation proposals based on these types of transmission facility benefits.[41]

19.     The Commission found that SPP's proposal addressed the concerns that the Commission articulated in the Rejection Order regarding transparency given the proposal's requirement that SPP staff provide in writing a recommendation and rationale regarding whether to accept or deny requests to allocate 100% of a Byway Facility's costs on a postage-stamp basis to the entire SPP region.  The Commission found that SPP's proposal provides specific procedures for documenting and explaining SPP's analysis and recommendations.  The Commission further recognized that SPP committed to include within future annual filings documentation of any requests to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region that are granted or rejected under its proposal.[42]

20.     The Commission also found that SPP's proposal addressed the concerns that the Commission articulated in the Rejection Order regarding discretion because the proposal establishes clear eligibility criteria – the Capacity, Flow, and Benefit Criteria – and limits the SPP Board's consideration to whether a Byway facility meets those criteria when deciding whether to grant or deny a request for 100% regional postage-stamp cost allocation.[43]

21.     The Commission, however, found that there were two aspects of the proposed Tariff language that did not provide sufficient specificity about the limitations on SPP's discretion that SPP articulated in its Deficiency Response.  First, the Commission directed SPP to revise its proposed Tariff language by replacing "may" with "shall" in relation to how the SPP Board quantifies the benefit of a Byway facility so that it states that "[t]he benefit *shall* be quantified in terms of adjusted production cost and/or savings

---

[40] *Id.* P 50.

[41] *Id.* P 51 (citing *Midcontinent Indep. Sys. Operator, Inc.*, 170 FERC ¶ 61,242, at P 31 (2020); *Sw. Power Pool, Inc.*, Docket Nos. ER18-2243-000 and ER18-2245-000 (Oct. 10, 2018) (delegated order)).

[42] *Id.* P 52.

[43] *Id.* P 53.

through the Integrated Marketplace."[44]  The Commission stated this change was needed to clarify the proposed Tariff language and to ensure sufficient transparency about how SPP will evaluate whether a request satisfies the Benefit Criterion.[45]  The Commission also noted that SPP stated in its Deficiency Response that, if the Commission believed that the proposed Tariff language should be clarified, SPP was willing to make that change.[46]

22.     Second, the Commission also found that the proposed Tariff language did not specify the basis upon which the SPP Board will make its decision to approve or deny a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region.  The Commission noted that, in the Deficiency Response, SPP stated that the discretion exercised by the SPP Board is limited only to whether the Capacity, Flow, and Benefit Criteria have been met, and that the SPP Board does not have the discretion to approve a request when one or more of the specified criteria have not been met or to substitute alternative criteria in lieu of those defined in the proposed Tariff language.[47]  Therefore, the Commission directed SPP to add subsection ii to section III.E.5.j of SPP's Tariff to specify that the SPP Board's decision to approve or deny a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region will be based solely on whether the Capacity, Flow, and Benefit Criteria are satisfied.[48]

23.     Further, the Commission found that, contrary to protesters' arguments that reallocation of transmission costs would undermine transparency and predictability in cost allocation, the process for evaluating a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region will be described in the Tariff with adequate  specificity once SPP satisfies the Commission's directive in the Tariff Order.[49]

24.     The Commission disagreed with protesters' arguments that the cost allocation issues that SPP outlined in its filing should be addressed through  the RCAR process rather than SPP's proposed process for evaluating requests to allocate 100% of a Byway

---

[44] SPP, Proposed Tariff, attach. J, § III.E.2.c.

[45] Tariff Order, 181 FERC ¶ 61,076 at P 54.

[46] *Id.* (citing Deficiency Response at 5-6).

[47] *Id.* P 55 (citing Deficiency Response at 9-10).

[48] *Id.*

[49] *Id.* P 56.

facility's costs on a postage-stamp basis to the entire SPP region.  The Commission reasoned that SPP, by submitting a filing under section 205 of the FPA, did not need to demonstrate that the existing processes in its Tariff are insufficient to address the concerns identified in its filing.  The Commission therefore determined that it did not need to reach the question of whether these cost allocation issues are better addressed through the existing RCAR process.[50]

25.     The Commission disagreed with protesters' arguments that SPP's proposal is essentially a tariff waiver request and that SPP must demonstrate that it has met the Commission's four-part test for granting tariff waivers.  The Commission stated that SPP's filing does not request waiver of a provision in its Tariff and that SPP instead proposed to revise its Tariff to establish an SPP-administered process for evaluating requests to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region.[51]

26.     The Commission agreed with SPP that the proposed process for evaluating requests to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region does not unlawfully sub-delegate the Commission's ratemaking authority.  The Commission found that SPP's proposal, like other aspects of SPP's Tariff approved by the Commission that provide flexibility to SPP's board regarding cost allocation, will provide the SPP Board with flexibility in cost allocation for specific Byway facilities, on a case-by-case basis, under specified conditions that are clearly outlined in the Tariff.  The Commission noted that regional transmission organizations/independent system operators (RTO/ISO), as independent entities, have governing boards with some discretion in making decisions related to transmission planning and cost allocation.[52]

27.     Finally, the Commission disagreed with protesters' assertions that the models and assumptions that SPP staff will use to analyze benefits are unidentified because SPP in its transmittal letter explained how adjusted production costs and energy costs savings through the Integrated Marketplace will be calculated and measured, and SPP stated that its staff's analysis, recommendation, and rationale will be made public.[53]

---

[50] *Id.* P 58.

[51] *Id.* P 59.

[52] *Id.* P 60 (citing *Sw. Power Pool, Inc.*, 111 FERC ¶ 61,118, at P 57 (2005)).

[53] *Id.* P 61 (citing SPP Deficiency Response at 9; SPP Transmittal at 19-20).

## IV.    **Compliance Filing**

28.    In its Compliance Filing, SPP submitted revised Tariff sheets that:  (1) revise section III.E.2.c of Attachment J of the Tariff to state that benefits from a proposed cost allocation "<u>shall</u> be quantified in terms of adjusted production cost and/or savings through the Integrated Marketplace;" and (2) add a new subsection ii in section III.E.5.j of Attachment J of the Tariff such that a decision by the Board to approve or deny a request for waiver shall be based solely on whether the three criteria in section III.E.2 of the Tariff are all satisfied.

## V.    **Discussion**

###    A.    **Procedural Issues**

29.    Notice of SPP's Compliance Filing was published in the *Federal Register*, 87 Fed. Reg. 71,622 (Nov. 23, 2022), with interventions and protests due on or before December 7, 2022.  Indicated Transmission Owners filed a timely protest.  On December 21, 2022, SPP filed a motion for leave to answer and answer in response to Indicated Transmission Owners' protest.  On December 22, 2022, Sunflower, Midwest Energy, Inc., Basin Electric Power Cooperative, and Kansas Electric Power Cooperative, Inc. (collectively, Supporting Parties) filed a request for leave to answer and answer in response to Indicated Transmission Owners' protest.

30.    On December 13, 2022, Supporting Parties filed a request for leave to answer and answer to Indicated Transmission Owners' and Indicated Utilities' request for rehearing of the Tariff Order.  On December 16, 2022, SPP filed a motion for leave to answer and answer in response to Indicated Transmission Owners' and Indicated Utilities' requests for rehearing of the Tariff Order.

31.    Rule 213(a)(2) of the Commission's Rules of Practice and Procedure[54] prohibits an answer to a protest unless otherwise ordered by the decisional authority.  We are not persuaded to accept SPP's and Supporting Parties' answers and will, therefore, reject them.

32.    Rule 713(d)(1) of the Commission's Rules of Practice and Procedure[55] prohibits answers to a request for rehearing.  Accordingly, we deny Supporting Parties' and SPP's motions for leave to answer to the requests for rehearing and reject the answers.

---

[54] 18 C.F.R. § 385.213(a)(2).

[55] *Id.* §§ 385.713(d)(1), 385.213(a)(2).

B.     **Substantive Issues**

1.     **Requests for Rehearing**

a.     **Whether the Commission Provided Sufficient Protection Against Unjust, Unreasonable, and Unduly Discriminatory Outcomes by Granting Too Much Discretion to the SPP Board, Contrary to its Prior Rejection of SPP's Earlier Proposal**

33.     Indicated Transmission Owners argue that permitting the SPP Board to vote by secret ballot without justification raises the risk that the SPP Board will approve or deny waivers of the Highway/Byway cost allocation method on a discriminatory basis. Indicated Transmission Owners state that the Deficiency Letter in this proceeding asked about whether the discretion to vote in secret could yield discriminatory outcomes. Indicated Transmission Owners state that the Commission in the Tariff Order placed "too much weight on the objective criteria and process that the SPP *staff* will use when developing its recommendation."[56] Indicated Transmission Owners state that the Commission also granted too much discretion to the SPP Board given that the SPP Board's decision on whether to grant or deny waivers of the Highway/Byway cost allocation method will be reported to the Commission only on an annual basis and without any requirement that the SPP Board justify its decision or disclose its votes or voting process.[57]

34.     Indicated Transmission Owners argue that the Commission in the Tariff Order accepted SPP's proposal on the same basis that it rejected SPP's similar proposal in the Rejection Order without explaining why it departed from its position in the Rejection Order. Indicated Transmission Owners state that the Commission in the Rejection Order rejected SPP's attempt to compare its earlier waiver proposal to the Transformer Waiver Process and the Base Plan Upgrade Waiver Process.[58] Indicated Transmission Owners state that the Commission cited no tariff or Commission precedent for the Commission's

---

[56] Indicated Transmission Owners Request for Rehearing at 18-19 (citing Deficiency Letter, Docket No. ER22-1846-000, at 2-3 (July 28, 2022)).

[57] *Id.* at 19.

[58] *Id.* at 19-21 (citing SPP Proposal, Transmittal Letter at 25-26; SPP 2021 Proposal, Transmittal Letter at 15-16; Rejection Order, 175 FERC ¶ 61,198 at P 41).

assertion that RTO and ISO governing boards have discretion in transmission planning and cost allocation.[59]

35.     In addition, Indicated Utilities argue that the Commission's failure to require reinstatement of the split of cost allocation based on the existing Highway/Byway method where circumstances giving rise to 100% reallocation on a regional basis of a Byway facility's costs have changed is unduly discriminatory, especially where the decision to reallocate costs is made by the SPP Board rather than the Commission.[60]  Indicated Utilities state that, without an "equally accessible path" to reinstatement of the existing Highway/Byway cost allocation, SPP's proposal places an unduly discriminatory burden, including the need to file a complaint pursuant to section 206 of the FPA, on parties seeking to reinstate the earlier Highway/Byway cost allocation.[61]

   **b.**  **Whether the Commission Unlawfully Granted a Remedy Without Finding a Cost Allocation Problem**

36.     Indicated Transmission Owners argue that SPP's existing Highway/Byway cost allocation process on balance produces just and reasonable results and already has a mechanism, RCAR, which revisits those results periodically to determine whether the existing process continues to produce just and reasonable results.  Indicated Transmission Owners state that the Commission dismissed on procedural grounds the 2022 RCAR III Report submitted by Indicated Transmission Owners, which shows that no revision to that process is necessary because every SPP zone remains above a 1.0 cost-benefit ratio and those results have improved since the 2016 RCAR II Report.  Indicated Transmission Owners reason that the RCAR III Report demonstrates that no perceived inequity justifies changing the existing Highway/Byway cost allocation scheme because it is still producing just and reasonable results for all zones in SPP and therefore fairly allocates aggregate costs with aggregate benefits.[62]

---

[59] *Id.* at 21-22 (citing Tariff Order, 181 FERC ¶ 61,076 at P 60).

[60] Indicated Utilities Request for Rehearing at 19-20.  Indicated Utilities explain that SPP's proposal in this proceeding is different from another instance where the Commission delegated authority to the SPP Board to modify cost allocation because, in that other proceeding, SPP was required to file with the Commission waivers of cost allocation granted by the SPP Board.  *See id.* at 20 n.59 (citing *Sw. Power Pool, Inc.*, 111 FERC ¶ 61,118, at P 56 (2005)).

[61] *Id.* at 20-21.

[62] Indicated Transmission Owners Request for Rehearing at 11-13 (citing Indicated Transmission Owners Deficiency Response Answer at 4-6, attach. A at 61).

37.    Indicated Transmission Owners state that the project-by-project approach that the Commission accepted in the Tariff Order undermines the Commission's policy in Order No. 1000 that prefers review of the equity of transmission planning in the aggregate and was supported by parties that cited the existing Highway/Byway approach as a reason for their support of Order No. 1000.[63]  Indicated Transmission Owners maintain that, under the "roughly commensurate" standard for cost allocation, every project does not need to be reviewed to render a cost allocation scheme just and reasonable and that requiring such review would undermine *ex ante* cost allocation schemes established by Order No. 1000.[64]  Indicated Transmission Owners argue that Supporting Parties' representation that SPP's proposed revisions to the Highway/Byway process would apply to, at most, 2.8% of existing Byway facilities undermines SPP's and Supporting Parties' position that the existing Byway facilities cost allocation contains a systemic flaw.  Indicated Transmission Owners argue that the Commission in the Tariff Order failed to address this argument that SPP's proposed changes to the Highway/Byway cost allocation process are not needed.[65]

### c.  Whether the Commission Erred by Unlawfully Delegating its Rate-Setting and Adjudicatory Authority to the SPP Board

38.    Indicated Transmission Owners argue that the Commission delegated its authority over wholesale rates under section 205 of the FPA to the SPP Board to deviate on a project-by-project basis from the existing Highway/Byway cost allocation rules.  Indicated Transmission Owners argue that this delegation unlawfully allows the SPP

---

[63] Indicated Transmission Owners Request for Rehearing at 13-14 (citing Order No. 1000, 136 FERC ¶ 61,051 at P 553; *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252, at PP 52, 78, 116 (2010), *order on reh'g*, 137 FERC ¶ 61,075 (2011); *Sw. Power Pool, Inc.*, 144 FERC ¶ 61,059, at P 340 (2013), *order on reh'g*, 149 FERC ¶ 61,048 (2014), *order on reh'g*, 151 FERC ¶ 61,045 (2015), *aff'd sub nom. Okla. Gas & Elec. Co. v. FERC*, 827 F.3d 75 (D.C. Cir. 2016)).  Indicated Transmission Owners also describe the Commission as seeking public comment on whether to shift to a more integrated and holistic cost allocation process and former Chairman Glick and Commissioner Clements as concerned with inefficient and piecemeal transmission cost allocation.  *See id.* at 14 n.39 (citing *Bldg. for the Future Through Elec. Reg'l Transmission Plan. & Cost Allocation and Generator Interconnection*, 176 FERC ¶ 61,024, at P 86 (2021) (Glick and Clements, Comm'rs, concurring at P 2)).

[64] *Id.* at 14 (citing *Long Island Power Auth. v. FERC*, 27 F.4th 705, 715 (D.C. Cir. 2022)).

[65] *Id.* at 15 (citing Supporting Parties Comments in Support, Docket No. ER22-1846-000, at 7 (filed May 29, 2022)).

Board, not the Commission, to determine a just and reasonable rate through a secret vote without providing due process and to act as arbiter and factfinder when stakeholders disagree with the criteria for a Byway Facilities waiver.[66]

39.     Indicated Utilities contend that the Commission ceded its cost allocation responsibilities under section 205 of the FPA to the SPP Board when it relied on SPP's transmittal to show how production costs and energy cost savings through SPP's Integrated Marketplace will be calculated and measured.[67]  Indicated Utilities maintain that Commission precedent requires cost allocation criteria to be stated in a tariff and that the Commission did not explain how the Tariff Order is consistent with that precedent.[68]

40.     Indicated Transmission Owners maintain that the Commission's prior acceptance of similar delegations is inconsistent with the Commission's statement in the Rejection Order that these similar delegations did not justify delegating to the SPP Board authority to waive the Highway/Byway cost allocation methodology.[69]  Indicated Transmission Owners state that the Commission's attempt to distinguish the waiver process it accepted in the Tariff Order from waiver of a filed rate is unsupported given that the tariff language and SPP's transmittal in this proceeding used the word "waiver" and that under the process accepted in the Tariff Order, the Highway/Byway cost allocation methodology will apply unless the SPP Board votes to take a different process.[70]

41.     Indicated Transmission Owners argue that the Commission, having already found in the Rejection Order that SPP proposed to provide too much discretion to the SPP Board, inferred SPP's intent through SPP's Deficiency Response and ordered SPP to codify the Commission's understanding of SPP's intent on compliance.  Indicated Transmission Owners state the Commission failed to provide substantial evidence to support its finding that SPP's proposed criteria would limit the SPP Board's discretion

---

[66] *Id.* at 15-16 (citing *Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996)).

[67] Indicated Utilities Request for Rehearing at 21 (citing Tariff Order, 181 FERC ¶ 61,076 at P 61).

[68] *Id.* at 21-22 (citing *PJM Interconnection, L.L.C.*, Opinion No. 494, 119 FERC ¶ 61,063, at PP 66, 72 & n.99 (2007), *order on reh'g*, Opinion No. 494-A, 122 FERC ¶ 61,082 (2008), *review granted in part sub nom. Ill. Com. Comm'n v. FERC*, 576 F.3d 470 (7th Cir. 2009)).

[69] Indicated Transmission Owners Request for Rehearing at 16-17 (citing Rejection Order, 175 FERC ¶ 61,198 at P 41).

[70] *Id.* at 17-18 (citing SPP, Tariff, attach. J, § III.A.2.i.a; SPP, Proposed Tariff, attach. J, § III.E.1; SPP Transmittal at 14-15).

and to provide a rational explanation for how SPP's proposed criteria would limit that discretion.[71]

### d.     Whether the Commission Unlawfully Conditioned its Approval of SPP's Proposal

42.     Indicated Transmission Owners assert that the Commission exceeded its passive role under section 205 of the FPA by accepting SPP's proposal on the condition that SPP make substantive changes to SPP's proposed rate.  Indicated Transmission Owners state that the Commission in the Tariff Order found that the discretion SPP's proposal grants to the SPP Board could not be accepted as just and reasonable without the changes the Commission directed.  Indicated Transmission Owners represent that their protest in this proceeding, the Deficiency Letter in this proceeding, and the Commission in the Rejection Order all raised the concern that SPP had proposed to grant too much discretion to the SPP Board, thereby rendering the changes the Commission directed as more than a minor changes that would have been permitted by *NRG*.[72]  Indicated Transmission Owners assert that because the Commission in the Tariff Order found that SPP had proposed to grant too much authority to the SPP Board, the Commission's directive to SPP was not acquiesced to by SPP and therefore exceeded the Commission's authority under section 205 of the FPA.[73]

### e.     Whether the Commission Failed to Address the Lack of Supporting Evidence for SPP's Proposal

43.     Indicated Transmission Owners argue that SPP's proposal was not supported despite the possibility that it could result in substantial cost shifts for existing facilities.[74]

---

[71] *Id.* at 25-26.

[72] *Id.* at 23-24 (citing *NRG Power Mktg., LLC v. FERC*, 862 F.3d 108, 114-15 (D.C. Cir. 2017) (*NRG*); Tariff Order, 181 FERC ¶ 61,076 at PP 54-55; Rejection Order, 175 FERC ¶ 61,198 at PP 38-39; Indicated Transmission Owners Protest to Deficiency Letter at 5-6).

[73] *Id.* at 24-25 (citing Tariff Order, 181 FERC ¶ 61,076 at P 55; *NRG*, 862 F.3d at 876).

[74] *Id.* at 22 (citing Indicated Transmission Owners Protest at 25-26).  Indicated Transmission Owners state that SPP failed to disclose the following in this proceeding: (1) any estimate of the total number of Byway Facilities for which costs will be reallocated; (2) any rate impact analysis at all, either in terms of gross revenue requirement or impact on zonal transmission rates within SPP; (3) any estimate of the shift of costs that will occur, including which zones will be most significantly affected and to what degree; (4) any analysis of why those cost shifts are just and reasonable and

According to Indicated Transmission Owners, SPP's failure to provide this information resulted in the Commission accepting SPP's proposal with insufficient evidence of a problem or resulting rate impacts to SPP customers from the status quo or SPP's proposal.[75]

44.     Indicated Transmission Owners argue that the Commission failed to address Indicated Transmission Owners' protest that SPP did not explain the specific numeric thresholds for each proposed criteria and did not calculate benefits for any projects identified for reallocation, thereby demonstrating that the Benefit Criterion is open-ended.  Indicated Transmission Owners describe the Commission as not addressing how the criteria are clear and objective or just and reasonable.  Despite SPP's reliance on the Wind-Rich Areas Report and a white paper from the Cost Allocation Working Group to describe the transformer waiver process, Indicated Transmission Owners state that SPP did not provide sufficient supporting studies or testimony to support the proposed criteria themselves.[76]

45.     Indicated Utilities argue that the Commission misapplied the cost causation principle in finding that the three criteria for cost reallocation in SPP's proposal will better align the allocation of a Byway facility's costs with the beneficiaries of that facility.  According to Indicated Utilities, these criteria could, at most, demonstrate that the zone in which a particular Byway facility is located experience a negative cost-benefit balance and that the Byway facility benefits a transmission pricing zone beyond the zone in which the facility is located.  Indicated Utilities contend that neither of these results justifies undermining the Commission's earlier finding that the existing Highway/Byway

---

not unduly discriminatory, beyond high-level summaries of wind proliferation; (5) any factual testimony supporting SPP's claims that a cost inequity currently exists that demands this remedy; (6) any discussion of why, even if such a remedy is required, an *ad hoc* waiver process is appropriate; (7) any forecast of the possibility that the conditions SPP claims exist today that justify reallocation may actually reverse in the future and when.  *Id.* (citing Indicated Transmission Owners Protest at 19-20).

[75] *Id.* at 22-23 (citing *Ky. Mun. Energy Agency v. FERC*, 45 F.4th 162, 177 (D.C. Cir. 2022)).

[76] *Id.* at 26-27 (citing Tariff Order, 181 FERC ¶ 61,076 at P 50; Indicated Transmission Owners Protest at 16-18; SPP Transmittal at 4 n.11).  According to SPP, the Cost Allocation Working Group in July 2019 approved the Wind-Rich Areas Report, which "included an overview of the issues, a summary of the work performed, and analyses of the various solutions and recommendations, which then was provided to the RSC."  SPP Transmittal at 13.

cost allocation methodology and Balanced Portfolio approach allocate costs at least roughly commensurate with the estimated benefits.[77]

46.     Indicated Utilities maintain that requiring cost reallocation to the entire SPP region when more than one transmission pricing zone benefits from a Byway facility relies on an incorrect distinction between zonal and regional cost allocation and is not supported by evidence that all SPP transmission pricing zones benefit from a Byway facility under the process the Commission accepted in the Tariff Order.  Indicated Utilities state that SPP's proposal violates the prohibition on requiring a group of utilities to pay for trivial benefits relating to costs and argues that the Commission erred in allowing automatic default to such cost allocation.[78]

47.     Indicated Utilities argue that the existing allocation of two thirds of the costs of Byway facilities to a local zone and one third on a regional basis already accounts for the fact that some zones beyond the Byway facility's zone derive some benefit from the facility.  Indicated Utilities assert, however, that allocating the entire cost of a Byway facility regionally on a postage stamp basis does not mirror the distribution of benefits outside the facility's transmission pricing zone and does not justify finding that a facility meeting the criteria in SPP's proposal necessarily provides significant benefits to the whole SPP region.[79]  Indicated Utilities state that a Byway facility's satisfaction of the criteria in SPP's proposal to reallocate costs entirely to the SPP region runs counter to

---

[77] Indicated Utilities Request for Rehearing at 11-13 (citing Tariff Order, 181 FERC ¶ 61,076 at PP 48-49; *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252 at PP 62-82; *Sw. Power Pool, Inc.*, 144 FERC ¶ 61,059 at PP 351-52).  Indicated Utilities posit that the Commission's finding that three wind-rich transmission pricing zones are unfairly allocated costs under the existing Highway/Byway cost allocation methodology is undermined "by evidence showing that two of those three zones have the lowest power costs in the entire SPP region."  *Id.* at 13 n.35 (citing Indicated Utilities Protest, Exs. 1-2; Indicated Transmission Owners October 21, 2022 Answer at 4-6 and Ex. A).

[78] *Id.* at 13-14 (citing *Old Dominion Elec. Coop. v. FERC*, 898 F.3d 1254, 1263 (D.C. Cir. 2018); *Ill. Com. Comm'n v. FERC*, 576 F.3d 470, 476 (7th Cir. 2009)).

[79] *Id.* at 14-15 (citing *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252 at PP 49, 94, 111).  According to Indicated Utilities, the possibility "that a transmission facility rated 115 kV or 138 kV or even 230 kV located in Hays, Kansas, provides roughly commensurate benefits 425 miles away in Springfield, Missouri" contradicts the Commission's recognition of the role that voltage levels play in SPP transmission cost allocation and the physics of electricity transmission.  *Id.* at 15.

Commission precedent rejecting cost allocation only based on the individual use of a facility and provides no information to compare the costs and benefits of that facility.[80]

### f.      Whether the Commission Departed from Cost Allocation Precedent

48.     Indicated Utilities state that the Commission failed to explain how SPP's proposal is consistent with the Commission's earlier determinations both that SPP's prior Highway/Byway cost allocation framework satisfies the cost causation principle and that costs need not be allocated solely with an individualized use of a facility.[81]  Indicated Utilities contend that the Commission in the Tariff Order did not explain how "prospective *ad hoc* reallocation of the costs of Byway Facilities costs to all SPP loads on a postage stamp basis will enable transmission customers, utilities, and generation and transmission developers" to understand *ex ante* how and who will bear the costs of new transmission.[82]  According to Indicated Utilities, *ad hoc* cost reallocation through satisfaction of the criteria in SPP's proposal contradicts the Commission's preference for *ex ante* cost allocation as expressed in Order Nos. 890 and 1000.[83]

### 2.      Commission Determination

49.     Upon further consideration, we set aside the Tariff Order and reject SPP's proposal to establish a process through which, on a case-by-case basis, 100% of the costs of certain Byway facilities can be allocated to the entire SPP region on a postage-stamp basis.  As explained below, based on the record in this proceeding, we find that SPP has not met its burden under section 205 of the FPA to show that the process SPP proposed for allocating 100% of the costs of a Byway facility to the SPP region on a postage-stamp basis will result in outcomes that are just and reasonable and not unduly discriminatory or

---

[80] *Id.* at 15-16 (citing *Midwest Transmission Owners v. FERC*, 373 F.3d 1361, 1368 (D.C. Cir. 2003); *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252 at P 81).

[81] *Id.* at 16-17 (citing *Sw. Power Pool, Inc.*, 144 FERC ¶ 61,059 at PP 351-52; *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252 at P 81).

[82] *Id.* at 18.

[83] *Id.* at 18-19 (citing Order No. 1000, 136 FERC ¶ 61,051 at P 499; *Preventing Undue Discrimination & Preference in Transmission Serv.*, Order No. 890, 118 FERC ¶ 61,119, at P 557, *order on reh'g*, Order No. 890-A, 121 FERC ¶ 61,297, at P 251 (2007), *order on reh'g*, Order No. 890-B, 123 FERC ¶ 61,299 (2008), *order on reh'g*, Order No. 890-C, 126 FERC ¶ 61,228, *order on clarification*, Order No. 890-D, 129 FERC ¶ 61,126 (2009)).

preferential.  Given that we are rejecting SPP's proposal, we also dismiss as moot SPP's Compliance Filing.

50.     The compliance directive in the Tariff Order required SPP to add language to the SPP Tariff to:  (1) change the benefit criterion to say that the benefit "shall" be quantified in terms of adjusted production cost and/or savings through the Integrated Marketplace; and (2) specify that the SPP Board's decision to approve or deny a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region must be based on only whether the Capacity, Flow, and Benefit Criteria are met.[84]  We agree with Indicated Transmission Owners that SPP's proposal, even as modified by the Commission's directives in the Tariff Order, continues to grant the SPP Board too much discretion in allocating the costs of Byway facilities,[85] and does not fully address the concerns with the discretion afforded to the SPP Board under its prior proposal that the Commission articulated in the Rejection Order.[86]

51.     Although the two compliance directives from the Tariff Order described above limit the basis upon which the SPP Board could reallocate costs of a Byway facility to the entire SPP region, the proposed Tariff language still allows for a significant amount of discretion because it does not require the SPP Board to approve a reallocation request if the criteria are met.  Thus, the SPP Board could deny a requested reallocation where SPP staff has determined that the criteria are met or, conversely, approve a reallocation where SPP staff has determined that the criteria are not met.  SPP's proposed Tariff language states that "[f]or a Base Plan Upgrade to be *eligible* for this waiver . . . the Base Plan Upgrade must satisfy each of the . . . three criteria."[87]  While a Byway facility must satisfy the three criteria to be eligible for 100% regional, postage-stamp cost allocation, there is no proposed requirement for the SPP Board to approve the request if the Byway facility satisfies the criteria.  The SPP Board's discretion to make decisions that are potentially inconsistent with whether the criteria set forth in the Tariff are met could result in unduly discriminatory outcomes.

52.     Additionally, SPP's proposal, even as modified by the compliance directive in the Tariff Order, creates the opportunity for arbitrary and inconsistent outcomes because the proposed Tariff language does not define the circumstances under which the two types of

---

[84] Tariff Order, 181 FERC ¶ 61,076 at PP 54-55.

[85] *See* Indicated Transmission Owners Request for Rehearing at 18-21.

[86] *See* Rejection Order, 175 FERC ¶ 61,198 at PP 40-41.  Because we find that SPP's proposal grants too much discretion to the SPP Board and are setting aside the Tariff Order, we need not address the other arguments raised on rehearing.

[87] SPP, Proposed Tariff, attach. J, § III.E.2 (emphasis added).

benefits used for the Benefit Criterion (adjusted production cost savings and savings in the Integrated Marketplace), or both, will be considered. Under SPP's proposal, as modified by the compliance directive, the SPP Board would be allowed to rely on one type of benefit when reviewing one request, and another type of benefit when reviewing another request, regardless of whether the circumstances of both requests were identical. We find that this potential for disparate treatment raises the potential for unduly discriminatory cost allocation outcomes.[88]

53.     We agree with Indicated Transmission Owners that the discretion provided to the SPP Board here is not similar to cost allocation waivers under SPP's Transformer Waiver Process.[89] SPP's Transformer Waiver Process applies only to specific facilities at specific interconnections where the SPP Board must determine whether the power flows through a transformer at a dual-voltage facility interconnected to a lower voltage system are from a lower to a higher voltage and whether the transformer is necessary for the support and benefit of the lower voltage system.[90] As the Commission in the Rejection Order explained, the standards for SPP's Transformer Waiver Process are by their nature relatively binary and apply only to a limited group of facilities. By contrast, SPP's proposal here, even as modified by the Commission's compliance directive in the Tariff Order, "would make all transmission projects that are designated as Byway facilities eligible to request a waiver," "[t]he number of transmission facilities and amount of costs eligible for Byway facility cost allocation waivers would be notably more expansive," and "the waiver process could potentially be far-reaching scope."[91]

54.     We recognize that the RTO/ISO model provides an element of discretion to an RTO/ISO's board of directors. For example, the SPP Board may currently make decisions about which transmission facilities are selected as part of SPP's regional

---

[88] *Mo. River Energy Servs. v. FERC*, 918 F.3d 954, 958 (D.C. Cir. 2019) ("A mere difference in the treatment of two entities does not violate that provision; instead, undue discrimination occurs only if the entities are 'similarly situated,' such that 'there is no reason for the difference.'" (quoting *State Corp. Comm'n v. FERC*, 876 F.3d 332, 335 (D.C. Cir. 2017); *Transmission Access Policy Study Grp. v. FERC*, 225 F.3d 667, 721 (D.C. Cir. 2000) (per curiam)).

[89] *See* Indicated Transmission Owners Request for Rehearing at 19-21 (citing SPP Proposal, Transmittal Letter at 25-26; SPP 2021 Proposal, Transmittal Letter at 15-16; Rejection Order, 175 FERC ¶ 61,198 at P 41).

[90] *See* Rejection Order, 175 FERC ¶ 61,198 at P 41.

[91] *Id.*

Document Accession #: 20230713-3088     Filed Date: 07/13/2023

transmission plan for purposes of cost allocation.[92]  However, SPP's proposal would provide the SPP Board with the discretion to change which cost allocation method applies to specific Byway facilities after they have been selected as a Byway facility. Given the concerns that we discuss above, we find that SPP has not demonstrated that the way it has proposed to extend the SPP Board's discretion is just and reasonable and not unduly discriminatory or preferential.

The Commission orders:

(A)     In response to Indicated Transmission Owners' and Indicated Utilities' requests for rehearing, the Tariff Order is hereby modified and set aside, as discussed in the body of this order.

(B)     SPP's compliance filing is hereby dismissed as moot.

By the Commission.  Commissioner Danly is concurring with a separate statement attached.
Commissioner Christie is concurring with a separate statement attached.

( S E A L )

Debbie-Anne A. Reese,
Deputy Secretary.

---

[92] *See, e.g.*, SPP, Open Access Transmission Tariff, Sixth Revised Volume No. 1, attach. O, § V (6.0.0), § V.3.a-e (referring to processes requiring SPP Board approval for selection in SPP transmission expansion plan).

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southwest Power Pool, Inc.                    Docket Nos.  ER22-1846-002
                                                          ER22-1846-003

(Issued July 13, 2023)

DANLY, Commissioner, *concurring*:

I concur in today's issuance[1] because it sets aside an unlawful order[2] that never should have issued and from which I dissented.  Southwest Power Pool, Inc's (SPP) proposal should not have been accepted because SPP sought to arrogate to itself unfettered discretion in socializing the costs of "Byway" transmission projects.  As today's issuance acknowledges, the directives in the underlying order failed to render an otherwise unjust and unreasonable proposal just and reasonable.  I write separately to highlight that I previously explained how the Commission exceeded its authority in accepting SPP's proposal in the first place.[3]

For these reasons, I respectfully concur.

_____

James P. Danly
Commissioner

---

[1] *Sw. Power Pool, Inc.*, 184 FERC ¶ 61,028 (2023).  Today's issuance also dismisses a related compliance filing.

[2] *Sw. Power Pool, Inc.*, 181 FERC ¶ 61,076 (2022).

[3] *Id.* (Danly, Comm'r, dissenting).

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southwest Power Pool, Inc.                    Docket Nos.  ER22-1846-002
                                                          ER22-1846-003

(Issued July 13, 2023)

CHRISTIE, Commissioner, *concurring*:

1.      I concur with the order, which denies without prejudice SPP's earlier rate filing proposing amendments to its "Highway/Byway" cost allocation methodology.  This order thus reverses the Commission's approval of SPP's earlier filing.

2.      As I noted in my dissent to the original order of approval, state support for the new cost allocation proposed by the SPP Board was not uniform.[1]  At least four states were on record as opposing SPP's proposal.  Should SPP seek to file another version of its cost allocation for these types of projects, it is my hope that any such new cost allocation will earn the support of all states to which costs could be allocated.

        For these reasons, I respectfully concur.

_____
Mark C. Christie
Commissioner

---

[1] *Sw. Power Pool, Inc.*, 181 FERC ¶ 61,076 (2022) (Christie, Comm'r, dissenting at P 3), https://www.ferc.gov/news-events/news/commissioner-christies-dissent-spp-highwaybyway-cost-allocation-exception-docket.

Document Content(s)

ER22-1846-002.docx.......................................................1

# Exhibit B

Document Accession #: 20230914-3011          Filed Date: 09/14/2023

184 FERC ¶ 62,145
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southwest Power Pool, Inc.                    Docket No.  ER22-1846-004

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(September 14, 2023)

Rehearing has been timely requested of the Commission's order issued on
July 13, 2023, in this proceeding.  *Southwest Power Pool, Inc.*, 184 FERC ¶ 61,028
(2023).  In the absence of Commission action on a request for rehearing within 30 days
from the date it is filed, the request for rehearing may be deemed to have been denied.
16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2022); *Allegheny Def. Project v. FERC*,
964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the request for rehearing of the above-cited
order filed in this proceeding will be addressed in a future order to be issued consistent
with the requirements of such section.  As also provided in 16 U.S.C. § 825*l*(a), the
Commission may modify or set aside its above-cited order, in whole or in part, in such
manner as it shall deem proper.

Kimberly D. Bose,
Secretary.

Document Content(s)

ER22-1846-004.docx.......................................................1