**ORAL ARGUMENT SCHEDULED ON DECEMBER 9, 2024**

# In the United States Court of Appeals for the District of Columbia Circuit

**Nos. 23-1264, 23-1287, 24-1032, and 24-1033 (consolidated)**

_____

SUNFLOWER ELECTRIC POWER CORPORATION, *ET AL.*,
*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

_____

ON PETITIONS FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION

_____

## BRIEF FOR RESPONDENT
## FEDERAL ENERGY REGULATORY COMMISSION

_____

Matthew R. Christiansen
General Counsel

Robert H. Solomon
Solicitor

Carol J. Banta
Senior Attorney

For Respondent
Federal Energy Regulatory
 Commission
Washington, DC 20426

October 24, 2024

## CIRCUIT RULE 28(A)(1) CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

To counsel's knowledge, the parties and intervenors before this Court and before the Federal Energy Regulatory Commission in the underlying agency docket are as stated in the Brief for Petitioners.

### B.    Rulings Under Review

1.    Order Setting Aside Prior Order and Dismissing Compliance Filing, *Southwest Power Pool, Inc.*, FERC Docket No. ER22-1846, 184 FERC ¶ 61,028 (July 13, 2023), R. 56, JA 423 (*First Rehearing Order*);

2.    Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, *Southwest Power Pool, Inc.*, FERC Docket No. ER22-1846, 184 FERC ¶ 62,145 (Sept. 14, 2023), R. 60, JA 484; and

3.    Order Addressing Arguments Raised on Rehearing, *Southwest Power Pool, Inc.*, FERC Docket No. ER22-1846, 185 FERC ¶ 61,189 (Dec. 19, 2023), R. 66, JA 485 (*Second Rehearing Order*).

### C.    Related Cases

This case has not previously been before this Court or any other court.

Two other petitions before this Court arise from the same underlying agency proceeding:  *City Utilities of Springfield v. FERC*, No. 23-1054 (D.C. Cir. Feb. 24, 2023); and *American Electric Power Service Corp. v. FERC*, No. 23-1097 (D.C. Cir. Apr. 11, 2023) (transferred from 8th Cir. No. 23-1378 (filed Feb. 24, 2023)).  The

petitions in those cases seek judicial review of the earlier Order Accepting Tariff Revisions Subject to Condition, *Southwest Power Pool, Inc.*, FERC Docket No. ER22-1846, 181 FERC ¶ 61,076 (Oct. 28, 2022), R. 38, JA 306.  Case Nos. 23-1054 and 23-1097 were previously consolidated with these cases, but on March 22, 2024, the Court severed those petitions and placed them in abeyance.

Counsel is aware of four consolidated petitions for review in this Court that arise from an ongoing agency proceeding on a separate, but related, tariff filing concerning cost allocation for certain of Petitioner Sunflower Electric Power Corporation's transmission facilities.  *See Southwest Power Pool, Inc.*, FERC Docket No. ER24-1583, 187 FERC ¶ 61,123 (2024), JA 552 (discussed at *infra* pp. 20-22, 25-27), *reh'g pending, on review in City Utils. of Springfield, et al. v. FERC* (Nos. 24-1270, 24-1282, 24-1283, and 24-1285).  That agency proceeding is not yet final; the petitions for review are currently in abeyance.

/s/ *Carol J. Banta*
Carol J. Banta
Senior Attorney

## TABLE OF CONTENTS

**PAGE**

COUNTER-STATEMENT OF JURISDICTION......................................1

STATEMENT OF THE ISSUES...............................................3

STATUTORY AND REGULATORY PROVISIONS ...............................5

STATEMENT OF FACTS ....................................................5

I.     STATUTORY AND REGULATORY BACKGROUND ...................5

       A.    The Federal Power Act ........................................5

       B.    Regional Transmission Organizations ....................6

       C.    Regional Transmission Planning and Cost Allocation...........9

II.    SOUTHWEST'S REGIONAL COST ALLOCATION
       METHODS........................................................10

III.   THE COMMISSION PROCEEDINGS AND ORDERS.................12

       A.    The Previous Proceeding:  Southwest's First Proposal and
             the 2021 *Rejection Order* .......................................12

       B.    The Underlying Proceeding:  Southwest's Revised Proposal
             and the 2022 *Tariff Order*.......................................14

       C.    The Orders on Judicial Review:  The Commission's Reversal
             in the 2023 *First* and *Second Rehearing Orders*...................18

       D.    The Subsequent Proceeding:  Southwest's Alternative
             Proposal and the 2024 *Allocation Order* ...............................20

# TABLE OF CONTENTS

**PAGE**

SUMMARY OF ARGUMENT ................................................... 22

ARGUMENT ............................................................... 24

I.     NEITHER PETITIONER HAS DEMONSTRATED THAT THIS COURT HAS JURISDICTION TO CONSIDER ITS CHALLENGES TO THE *2023 REHEARING ORDERS* .............. 24

II.    STANDARD OF REVIEW ............................................. 28

III.   THE COMMISSION REASONABLY REJECTED SOUTHWEST'S PROPOSED WAIVER PROCESS ...................... 31

     A.    The Commission reasonably found that Southwest had not shown that its proposed waiver process was not unduly discriminatory or preferential. ................................. 32

         1.    The Commission reasonably found that the proposed waiver process afforded too much discretion to Southwest's Board of Directors.............. 32

         2.    The Commission reasonably found that the proposed waiver process lacked sufficient transparency. ............................................... 37

     B.    The Commission appropriately explained why it changed its determination on rehearing............................. 39

IV.   THE COMMISSION REASONABLY DID NOT CONSIDER, IN THIS PROCEEDING, WHETHER SOUTHWEST'S EXISTING COST ALLOCATION METHOD IS APPROPRIATE ............................................................... 41

CONCLUSION ........................................................... 46

# TABLE OF AUTHORITIES

**COURT CASES:**                                                   **PAGE**

*Advanced Energy Management Alliance v. FERC,*
    860 F.3d 656 (D.C. Cir. 2017) ....................................................6, 43

*Allegheny Defense Project v. FERC,*
    964 F.3d 1 (D.C. Cir. 2020) ............................................................21

*Antero Resources Corp. v. FERC,*
    No. 22-1278, 2024 WL 194189 (D.C. Cir. Jan. 18, 2024)...........2, 25

*Associated Gas Distributors v. FERC,*
    824 F.2d 981 (D.C. Cir. 1987) ............................................5, 6, 31-32

*\*Association of Oil Pipe Lines v. FERC,*
    876 F.3d 336 (D.C. Cir. 2017) ....................................................39, 40

*Bennett v. Spear,*
    520 U.S. 154 (1997) ......................................................................25

*Bridgeport Hospital v. Becerra,*
    108 F.4th 882 (D.C. Cir. 2024).......................................................30

*City of Orrville v. FERC,*
    147 F.3d (D.C. Cir. 1998) ..............................................................24

*City of Winnfield v. FERC,*
    744 F.2d 871 (D.C. Cir. 1984) .........................................................6

*Consolidated Edison Co. of New York, Inc. v. FERC,*
    347 F.3d 964 (D.C. Cir. 2003) .........................................................6

---

\*  Cases chiefly relied upon are marked with an asterisk.

# TABLE OF AUTHORITIES

**COURT CASES (continued):**                                    **PAGE**

*Consolidated Edison Co. of New York, Inc. v. FERC,*
    45 F.4th 265 (D.C. Cir. 2022)..........................................................42

*Consolo v. Federal Maritime Commission,*
    383 U.S. 607 (1966) ...................................................................31

*East Texas Electric Cooperative, Inc. v. FERC,*
    90 F.4th 579 (D.C. Cir. 2024)........................................................29

*FCC v. Prometheus Radio Project,*
    592 U.S. 414 (2021) ...................................................................29

*\*FERC v. Electric Power Supply Association,*
    577 U.S. 260 (2016) ......................................................... 7-8, 28-29

*Florida Gas Transmission Co. v. FERC,*
    604 F.3d 636 (D.C. Cir. 2010) ......................................................31

*\*Fore River Residents Against the Compressor Station v. FERC,*
    77 F.4th 882 (D.C. Cir. 2023)........................................................26

*General Motors Corp. v. FERC,*
    613 F.2d 939 (D.C. Cir. 1979) ......................................................43

*Green Development, LLC v. FERC,*
    77 F.4th 997 (D.C. Cir. 2023).....................................................29-30

*Loper Bright Enterprises v. Raimondo,*
    144 S. Ct. 2244 (2024) .................................................................30

*Louisiana Public Service Commission v. FERC,*
    10 F.4th 839 (D.C. Cir. 2021)........................................................30

iv

# TABLE OF AUTHORITIES

**COURT CASES (continued):**                                   **PAGE**

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ........................................................25

*Midwest ISO Transmission Owners v. FERC,*
  373 F.3d 1361 (D.C. Cir. 2004) ......................................8

*MISO Transmission Owners v. FERC,*
  45 F.4th 248 (D.C. Cir. 2022).......................................41

*Missouri River Energy Services v. FERC,*
  918 F.3d 954 (D.C. Cir. 2019) .......................................29

*Morgan Stanley Capital Group Inc. v. Public Utility District No. 1,*
  554 U.S. 527 (2008) .................................................7, 30

*Motor Vehicle Manufacturers Association of the United States, Inc.
  v. State Farm Mutual Automobile Insurance Co.,*
  463 U.S. 29 (1983) .................................................28, 29

*New York v. FERC,*
  535 U.S.1 (2002) .....................................................5, 7

*New York Regional Interconnect, Inc. v. FERC,*
  634 F.3d 581 (D.C. Cir. 2011) .......................................24

*New York State Public Service Commission v. FERC,*
  104 F.4th 886 (D.C. Cir. 2024)......................................39

*Northern States Power Co. v. FERC,*
  30 F.3d 177 (D.C. Cir. 1994) ........................................11

*NRG Power Marketing, LLC v. FERC,*
  862 F.3d 108 (D.C. Cir. 2017) .......................................44

## TABLE OF AUTHORITIES

**COURT CASES (continued):**                                    **PAGE**

*Oklahoma Gas & Electric Co. v. FERC*,
    11 F.4th 821 (D.C. Cir. 2021) ............................................................ 8

*Old Dominion Electric Cooperative v. FERC*,
    898 F.3d 1254 (D.C. Cir. 2018) ...................................................... 41

*\*PNGTS Shippers' Group v. FERC*,
    592 F.3d 132 (D.C. Cir. 2010) ............................................. 2, 24, 25

*\*Public Citizen, Inc. v. FERC*,
    839 F.3d 1165 (D.C. Cir. 2016) .................................................. 42-43

*Shell Energy North America (US), L.P. v. FERC*,
    107 F.4th 981 (D.C. Cir. 2024) .................................................. 26-27

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ..................................................... 2, 25

*South Carolina Public Service Authority v. FERC*,
    762 F.3d 41 (D.C. Cir. 2014) ........................................ 10, 29, 30, 37

*Texas v. EPA*,
    726 F.3d 180 (D.C. Cir. 2013) .......................................................... 25

*Transmission Agency of Northern California v. FERC*,
    628 F.3d 538 (D.C. Cir. 2010) .......................................................... 31

## TABLE OF AUTHORITIES

**ADMINISTRATIVE CASES:**                                    **PAGE**

*Southwest Power Pool, Inc.*,
    131 FERC ¶ 61,252 (2010) ........................................................10-11

*Southwest Power Pool, Inc.*,
    144 FERC ¶ 61,059 (2013), *on reh'g and compliance*,
    149 FERC ¶ 61,048 (2014), *on reh'g and compliance*,
    151 FERC ¶ 61,045 (2015) ...........................................................11

*Southwest Power Pool, Inc.*,   [*Rejection Order*]
    175 FERC ¶ 61,198 (2021) ............4, 12-14, 16-18, 36, 37, 38, 41, 44

*Southwest Power Pool, Inc.*,   [*Tariff Order*]
    181 FERC ¶ 61,076 (2022), *set aside on reh'g*,
    184 FERC ¶ 61,028, *on reh'g*,
    185 FERC ¶ 61,189 (2023) ................ 3, 16, 20, 26, 34, 38, 39, 40, 44

*Southwest Power Pool, Inc.*,   [*First Rehearing Order*]
    184 FERC ¶ 61,028, *on reh'g*,
    185 FERC ¶ 61,189 (2023) ...................2, 3, 18-19, 20, 26, 30, 32-33,
                                                              34, 35-36, 41, 44

*Southwest Power Pool, Inc.*,   [*Second Rehearing Order*]
    185 FERC ¶ 61,189 (2023) .................2, 3, 19-20, 30, 33, 34, 35, 36,
                                                              37, 38, 39, 40, 42-43, 44

*Southwest Power Pool, Inc.*,   [*Allocation Order*]
    187 FERC ¶ 61,123 (2024) ...............................3, 4, 20-22, 25, 27, 45

*Transmission Planning and Cost Allocation by Transmission Owning
    and Operating Public Utilities*,
    Order No. 1000, 136 FERC ¶ 61,051 (2011), *on reh'g and
    clarification*, Order No. 1000-A, 139 FERC ¶ 61,132, *on reh'g and
    clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd*,
    *South Carolina Public Service Authority v. FERC*,
    762 F.3d 41 (D.C. Cir. 2014) ................................9-10, 11, 34, 36, 37

# TABLE OF AUTHORITIES

**STATUTES:** **PAGE**

Administrative Procedure Act
    5 U.S.C. § 706(2)(A) ........................................................................ 28

Federal Power Act

    Section 201, 16 U.S.C. § 824 ...................................................... 5

    Section 205, 16 U.S.C. § 824d .............................. 4, 6, 19, 31, 43, 45

    Section 205(a), (b), (e), 16 U.S.C. § 824d(a), (b), (e) ........................ 5

    Section 206, 16 U.S.C. § 824e ...................................... 6, 42, 43

    Section 206(a), 16 U.S.C. § 824e(a)........................................... 6

    Section 313(b), 16 U.S.C. § 825*l*(b) .............................. 22, 24, 30, 40

**OTHER:**

Federal Energy Regulatory Commission, *Energy Primer: A Handbook of
    Energy Market Basics* (Dec. 2023),
    https://www.ferc.gov/media/energy-primer-handbook-energy-
    market-basics ................................................................ 8

# GLOSSARY

| | |
|---|---|
| *2023 Rehearing Orders* | Together, the *First Rehearing Order* and *Second Rehearing Order* |
| *[2024] Allocation Order* | Order Accepting Tariff Revisions, *Southwest Power Pool, Inc.*, 187 FERC ¶ 61,123 (2024), JA 552 |
| Byway facilities | Under Southwest's tariff, transmission facilities between 100 and 300 kilovolts, the costs of which are allocated 33 percent regionwide and 67 percent to the Southwest pricing zone in which such facilities are located |
| Commission or FERC | Respondent Federal Energy Regulatory Commission |
| *First Rehearing Order* | Order Setting Aside Prior Order and Dismissing Compliance Filing, *Southwest Power Pool, Inc.*, 184 FERC ¶ 61,028 (2023), R. 56, JA 423, on review in these consolidated cases |
| Intervenors | Intervenors for Petitioners Basin Electric Power Cooperative, Kansas Corporation Commission, and Southwest Power Pool, Inc. |
| Int. Br. | Opening brief of Intervenors for Petitioners |
| JA | Joint Appendix page(s) |
| Midwest | Petitioner Midwest Energy, Inc. |

# GLOSSARY

| | |
|---|---|
| P | Paragraph in a FERC order |
| Petitioners | Sunflower and Midwest |
| Pet. Br. | Opening brief of Petitioners |
| R. | Record item |
| *[2021] Rejection Order* | Order Rejecting Tariff Revisions, *Southwest Power Pool, Inc.*, 175 FERC ¶ 61,198 (2021), JA 19 |
| *Second Rehearing Order* | Order Addressing Arguments Raised on Rehearing, *Southwest Power Pool, Inc.*, 185 FERC ¶ 61,189 (2023), R. 66, JA 485, on review in these consolidated cases |
| Southwest (or SPP) | Intervenor Southwest Power Pool, Inc., a regional transmission organization (called "SPP" in Commission orders and Petitioners and Intervenors' opening briefs) |
| Sunflower | Petitioner Sunflower Electric Power Corporation |
| *[2022] Tariff Order* | Order Accepting Tariff Revisions Subject to Condition, *Southwest Power Pool, Inc.*, 181 FERC ¶ 61,076 (2022), R. 38, JA 306 |

# In the United States Court of Appeals
# for the District of Columbia Circuit

**Nos. 23-1264, 23-1287, 24-1032, and 24-1033 (consolidated)**
_____

SUNFLOWER ELECTRIC POWER CORPORATION, *ET AL.*,
*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.
_____

ON PETITIONS FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION
_____

## BRIEF FOR RESPONDENT
## FEDERAL ENERGY REGULATORY COMMISSION
_____

## COUNTER-STATEMENT OF JURISDICTION

Petitioners Sunflower Electric Power Corporation (Sunflower) and

Midwest Energy, Inc. (Midwest) seek review of orders issued by the

Federal Energy Regulatory Commission (Commission or FERC)

regarding proposed revisions to regional cost allocation.  The

Commission rejected a proposal by Intervenor Southwest Power Pool,

Inc. (Southwest) to provide, on a case-by-case basis, regional sharing of costs for certain transmission facilities. *Sw. Power Pool, Inc.*, 184 FERC ¶ 61,028, R. 56, JA 423, *on reh'g*, 185 FERC ¶ 61,189 (2023), R. 66, JA 485.

As discussed more fully in Part I of the Argument, *infra*, Petitioners Sunflower and Midwest have not met their burden to establish standing to pursue their challenges to the Commission's orders on review. *See Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002); *PNGTS Shippers' Grp. v. FERC*, 592 F.3d 132, 136 (D.C. Cir. 2010); *Antero Res. Corp. v. FERC*, No. 22-1278, 2024 WL 194189, at *1 (D.C. Cir. Jan. 18, 2024) (unpublished judgment). Neither has demonstrated, in Petitioners' opening brief (Pet. Br.), that it has a cognizable injury.

In addition, Sunflower's petition appears to be moot, as the Commission, in a separate, subsequent proceeding, recently approved the regional allocation of costs for four Sunflower transmission facilities — the only facilities for which Sunflower had requested regional allocation under the Southwest process that the Commission rejected, and the only facilities for which Southwest foresees receiving a

waiver application. *See Sw. Power Pool, Inc.*, 187 FERC ¶ 61,123,

JA 552 (2024), *discussed at* pp. 20-22, *infra*.

## STATEMENT OF THE ISSUES

This case arises from a series of orders in which the Commission

initially accepted, but later rejected, a regional system operator's

proposed process for granting case-by-case waivers of its standard cost

allocation rules for certain transmission facilities. *Sw. Power Pool, Inc.*,

181 FERC ¶ 61,076 (2022), R. 38, JA 306 (*Tariff Order*), *set aside on*

*reh'g*, 184 FERC ¶ 61,028 (2023), R. 56, JA 423 (*First Rehearing Order*),

*on reh'g*, 185 FERC ¶ 61,189 (2023), R. 66, JA 485 (*Second Rehearing*

*Order*).

All of these orders, as well as two others in separate Commission

proceedings, concern Southwest's efforts to allow the costs of certain

"Byway" transmission facilities to be allocated to its entire multistate

region. Costs of Byway facilities, classified by their voltage levels, are

allocated primarily to the pricing zones in which they are physically

located. Southwest sought, in several proceedings, to allow some such

facilities to spread their costs regionwide based on power flows and

benefits outside their home zones. In the challenged 2023 orders, the

3

Commission found that Southwest's proposed waiver process gave too much discretion to its Board of Directors and did not provide enough transparency about its decisionmaking.

Prior to this series of orders, the Commission had rejected an earlier proposal for a Southwest-determined waiver process, based on similar concerns about excessive discretion and insufficient transparency. *Sw. Power Pool, Inc.*, 175 FERC ¶ 61,198 P 1 (2021), JA 19 (*Rejection Order*). After this series of orders (as noted *supra* at p. 2), the Commission itself approved regionwide cost allocation for several Byway facilities. *Sw. Power Pool, Inc.*, 187 FERC ¶ 61,123 (2024), JA 552 (*Allocation Order*), *reh'g pending*.

Assuming jurisdiction, this appeal presents the following issue for review:

Whether the Commission reasonably determined that Southwest had failed to show that its proposed process would not result in unduly discriminatory or preferential outcomes, as required by Federal Power Act section 205, 16 U.S.C. § 824d, because the Commission found the process gave too much discretion to Southwest's Board of Directors and provided insufficient transparency regarding cost allocation decisions.

4

## STATUTORY AND REGULATORY PROVISIONS

Pertinent statutes and regulations are contained in the attached Addendum.

## STATEMENT OF FACTS

## I.   STATUTORY AND REGULATORY BACKGROUND

### A.   The Federal Power Act

Section 201 of the Federal Power Act, 16 U.S.C. § 824, gives the Commission jurisdiction over the rates, terms, and conditions of service for the transmission and wholesale sale of electric energy in interstate commerce.  This grant of jurisdiction is comprehensive and exclusive. *See generally New York v. FERC*, 535 U.S. 1 (2002) (discussing statutory framework and FERC jurisdiction).

All rates for or in connection with jurisdictional sales and transmission services are subject to FERC review to assure they are (1) just and reasonable, and (2) not unduly discriminatory or preferential.  Federal Power Act § 205(a), (b), (e), 16 U.S.C. § 824d(a), (b), (e); *see Assoc. Gas Distribs. v. FERC*, 824 F.2d 981, 998 (D.C. Cir. 1987) (noting that the statute "fairly bristles with concern for undue

discrimination").[1]  "When acting on a public utility's rate filing under

Federal Power Act section 205, the Commission undertakes 'an

essentially passive and reactive role' and restricts itself to evaluating

the confined proposal."  *Advanced Energy Mgmt. All. v. FERC*, 860 F.3d

656, 662 (D.C. Cir. 2017) (quoting *City of Winnfield v. FERC*, 744 F.2d

871, 875-76 (D.C. Cir. 1984)).

Section 206 of the Federal Power Act, 16 U.S.C. § 824e, authorizes

the Commission to investigate whether existing rates are lawful.  If the

Commission, on its own initiative or on a third-party complaint, finds

that an existing rate or charge is "unjust, unreasonable, unduly

discriminatory or preferential," it must determine and set the just and

reasonable rate.  16 U.S.C. § 824e(a).

## B.    Regional Transmission Organizations

Since the 1970s, a combination of technological advances and

policy reforms has given rise to market competition among power

suppliers.  The expansion of vast regional grids and the possibility of

---

[1]    Courts cite provisions of the Natural Gas Act (at issue in
*Associated Gas*) and the Federal Power Act interchangeably, "because
the relevant provisions of the two statutes are in all material respects
substantially identical."  *Consol. Edison Co. of N.Y., Inc. v. FERC*, 347
F.3d 964, 969 (D.C. Cir. 2003) (cleaned up) (citing cases).

long-distance transmission have enabled electric utilities to make large transfers of electricity in response to market conditions, thereby creating opportunities for competition among suppliers. *See New York*, 535 U.S. at 7-8 (explaining evolution of competitive markets). In the 1990s, the Commission furthered the development of such competition by ordering functional unbundling of wholesale generation and transmission services, requiring utilities to provide open, non-discriminatory access to their transmission facilities to competing suppliers. *See generally id.* at 11-13.

The Commission's efforts to foster wholesale electricity competition over broader geographic areas in recent decades have led to the creation of independent system operators and regional transmission organizations. *See generally Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 536-37 (2008). These independent regional entities operate the transmission grid on behalf of transmission-owning member utilities and offer services over their regional systems at rates set out in their open access transmission tariffs. *See FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 267-68

7

(2016); *Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1364 (D.C. Cir. 2004).

Southwest is a regional transmission organization that manages tens of thousands of miles of transmission infrastructure distributed across a multistate region in the central United States, extending from parts of New Mexico, Texas, and Louisiana at its southern end to the U.S.-Canadian border in North Dakota and Montana at the northern end. *See Okla. Gas & Elec. Co. v. FERC*, 11 F.4th 821, 825 (D.C. Cir. 2021); *see* Federal Energy Regulatory Commission, *Energy Primer: A Handbook of Energy Market Basics* at 91-94 (Dec. 2023),.

https://www.ferc.gov/media/energy-primer-handbook-energy-market-basics



(Source:  https://www.ferc.gov/industries-data/electric/electric-power-markets/spp)

### C.     Regional Transmission Planning and Cost Allocation

In 2011, the Commission issued a rulemaking intended to reform regional transmission planning and cost allocation.  *Transmission Planning & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051 (2011), *on reh'g and clarification*, Order No. 1000-A, 139 FERC ¶ 61,132, *on reh'g and*

*clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd*, *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 49-54 (D.C. Cir. 2014) (*South Carolina*).

Among other reforms, Order No. 1000 set forth certain principles for regional cost allocation that focused on cost causation, transparency, and regional flexibility.  *See South Carolina*, 762 F.3d at 53.  A key principle was that cost allocation methods must be known in advance. *See* Order No. 1000 P 560; *see also id.* PP 449, 559 (finding that lack of clear *ex ante* cost allocation rules was preventing efficient transmission planning); *id.* P 562 (requiring advance development of cost allocation methods "so that developers have greater certainty about cost allocation and other stakeholders will understand the cost impacts" of proposed facilities); *South Carolina*, 762 F.3d at 70, 82.

## II.    SOUTHWEST'S REGIONAL COST ALLOCATION METHODS

Since 2010, Southwest has used a "Highway/Byway Methodology" to allocate costs of transmission facilities based on voltage thresholds. *See generally Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252 (2010) (accepting tariff revisions).  Southwest designated two categories of facilities:  (1)  "Highway" facilities, defined as 300 kilovolts or above, the

10

costs of which would be allocated regionwide on a postage stamp basis[2]; and (2) "Byway" facilities, between 100 and 300 kilovolts, the costs of which would be allocated 33 percent on a regional postage stamp basis and 67 percent to the Southwest pricing zone in which such facilities are located. *Id.* P 10.[3] (At or below 100 kilovolts, transmission facility costs would be allocated entirely to the facility's zone. *Id.*) In considering Southwest's filing to comply with the requirements of Order No. 1000, the Commission accepted Southwest's use of the Highway/Byway Method for regional cost allocation as consistent with the principles set forth in that rulemaking. *See Sw. Power Pool, Inc.*, 144 FERC ¶ 61,059 (2013), *on reh'g and compliance*, 149 FERC ¶ 61,048 (2014), *on reh'g and compliance*, 151 FERC ¶ 61,045 (2015).

---

[2]    "Postage stamp" allocation is spread uniformly across the regional system, so all transmission customers pay the same amount for that facility. *See*, *e.g.*, *N. States Power Co. v. FERC*, 30 F.3d 177, 180 (D.C. Cir. 1994).

[3]    Southwest has 18 pricing zones. *See* Submission of Tariff Revisions at 11, *Sw. Power Pool, Inc.*, FERC Docket No. ER22-1846 (filed May 10, 2022), R. 1, JA 37, 47.

## III.  THE COMMISSION PROCEEDINGS AND ORDERS

### A.  The Previous Proceeding:  Southwest's First Proposal and the 2021 *Rejection Order*

In April 2021, Southwest submitted proposed revisions to its tariff to adopt a case-by-case process for allocating costs of some Byway facilities on a fully regional basis (that is, without any zonal allocation). *See Sw. Power Pool, Inc.*, FERC Docket No. ER21-1676, 175 FERC ¶ 61,198 P 1 (2021), JA 19 (*Rejection Order*).   Southwest explained that an increase in wind generation resources had resulted in some pricing zones having generation capacity well in excess of their own demand, requiring new transmission facilities that serve energy exports more than zonal load.  *Id.* PP 5-7, JA 21.  For that reason, Southwest proposed a process for waiving the cost allocation for some Byway facilities, allowing those facilities' costs to be shared regionwide, based on a determination that the facilities primarily benefit the region rather than a particular zone.  *Id.* P 8, JA 22.

Under that process, Southwest would evaluate a request for regional allocation based on analyses of power flows and absence of benefit to the zone.  *Id.* P 9, JA 22.  After receiving recommendations

from Southwest staff and committees, Southwest's Board of Directors would approve or deny the request.  *Id.*

In June 2021, the Commission rejected the proposal, finding that it gave the Southwest Board "too much discretion . . . without clear standards for how its cost allocation decisions will be made."  *Id.* P 39, JA 33.  Specifically, the proposal failed to set forth "objective standards, criteria, or thresholds" governing decisions to approve or deny a waiver, and the process "lack[ed] transparency" about those decisions.  *Id.* PP 39, 40, JA 33-34.  Thus, the proposal "create[d] a risk" that the Board may approve waivers without regionwide benefits or may reach different decisions on similar requests  *Id.* P 39, JA 33.  The process would not "provide predictable guidance" on approval, and the lack of clear standards "makes it difficult to determine the amount of transmission facility costs that would be allocated to the entire [Southwest] region."  *Id.* PP 40, 41 JA 34.  For those reasons, the Commission concluded that Southwest had not demonstrated that its proposal would "result in rates that are just and reasonable and not unduly discriminatory or preferential."  *Id.* P 38, JA 32-33.

13

Nevertheless, the Commission "recognize[d] and encourage[d] [Southwest's] efforts to proactively address transmission cost allocation issues associated with the increasing amount of renewable generation in the [Southwest] region." *Id.* P 38, JA 32; *accord id.* P 42, JA 35.  It rejected the proposal "without prejudice" to a revised proposal.  *Id.* P 42, JA 35.

**B.    The Underlying Proceeding:  Southwest's Revised Proposal and the 2022 *Tariff Order***

Southwest filed such a revised proposal in May 2022.  *See* Submission of Tariff Revisions, *Sw. Power Pool, Inc.*, FERC Docket No. ER22-1846 (filed May 10, 2022), R. 1, JA 37 (2022 Southwest Waiver Filing).  Southwest again proposed a case-by-case waiver process for regionally allocating costs of Byway facilities used to export wind generation to other zones.  *Id.* at 14-15, JA 50-51.  The revised process would require an applicant to satisfy three criteria:  Capacity, Flow, and Benefit.  *Id.* at 16-20, JA 52-56.  The Capacity Criterion would require showing that the total nameplate capacity of generation resources that are physically connected in the Byway facility's zone exceeds that zone's load.  *Id.* at 16-17, JA 52-53.  The Flow Criterion would require showing that more than 70 percent of the energy flows on

14

the Byway facility are attributed to generation resources located in that zone that are not associated with the zone's load (customer demand). *Id.* at 17-19, JA 53-55.  The Benefit Criterion would require showing that the Byway facility provides most of its benefit to load outside its zone, as measured by specified metrics.  *Id.* at 19-20, JA 55-56.

A waiver request would first be reviewed by Southwest's staff, which would provide a written recommendation and rationale for approval or denial to Southwest's Cost Allocation Working Group, Regional State Committee, Members Committee, and Board of Directors.  *Id.* at 21-25, JA 57-61.  The Cost Allocation Working Group would then vote and provide its recommendation to the Committees and Board; the Regional State Committee would vote and provide its recommendation to the Members Committee and Board.  *Id.* at 24, JA 60.  Finally, Members Committee would provide input and the Board would vote to approve or deny the request.  *Id.*  Approval would result in allocation, going forward, of all of the facility's costs to the entire Southwest region.  *Id.* at 29, JA 65.

The Commission issued a deficiency letter asking Southwest how its staff and the Board would consider benefits and how the Board

15

would make and document its decision to approve or deny a request. R. 29, JA 141; *see Tariff Order* PP 19, 34, JA 313, 320. In response, Southwest explained how it would analyze benefits based on adjusted production cost savings, Integrated Marketplace savings, or a combination of the two. R. 30, JA 145; *see Tariff Order* P 34, JA 320. It further stated that the Board would base its decision only on the Capacity, Flow, and Benefit Criteria and would require all three to be met. *See Tariff Order* P 36, JA 321.

On October 28, 2022, a divided Commission accepted the revised proposal in the *Tariff Order*. The Commission agreed that the waiver process would help to "better align the allocation" of Byway facility costs with the regional benefits that they can provide. *Tariff Order* P 48, JA 325-26. The Commission further found that the three Criteria were appropriate and sufficiently justified. *See id.* PP 50-51, JA 326-28. The Commission determined that the revised proposal addressed the concerns about transparency and discretion that the Commission had articulated in the 2021 *Rejection Order*; in particular, Southwest had provided "specific procedures for documenting and explaining [Southwest's] analysis and recommendations" and had cabined its

16

discretion with objective criteria. *Id.* PP 52-53, JA 328-29. For that reason, the Commission no longer had concerns about the degree of Southwest's discretion in the waiver process. *Id.* P 53, JA 329.

But the Commission remained concerned about the proposal's insufficient specificity about the limitations on Southwest's discretion. *Id.* P 54, JA 329. First, the Commission directed Southwest to expressly limit the analysis of benefits to adjusted production cost and/or Integrated Marketplace savings, excluding any other type of metric. *Id.* Second, the Commission directed Southwest to specify in its tariff that the Board must base its decision solely on whether all of the Criteria have been met, not permitting the Board to approve a waiver request where any Criterion is not met or to consider alternative factors. *Id.* P 55, JA 330.

Two Commissioners dissented from the *Tariff Order*. *See* JA 333, 337.

Several parties requested agency rehearing (R. 41; R. 42); when the Commission did not act on the requests within 30 days, they filed petitions for review of the *Tariff Order*. *City Utils. of Springfield, et al. v. FERC*, D.C. Cir. No. 23-1054; *Am. Elec. Power Serv. Corp. v. FERC*,

17

D.C. Cir. No. 23-1097 (transferred from 8th Cir. No. 23-1378). Because the Commission later reversed the *Tariff Order* in the *Rehearing Orders* challenged here, this Court (in its March 22, 2024 order) severed those petitions and placed them into abeyance pending resolution of these consolidated cases.

> C. **The Orders on Judicial Review: The Commission's Reversal in the 2023 *First* and *Second Rehearing Orders***

In July 2023, the Commission set aside the *Tariff Order* and rejected Southwest's revised proposal, again without prejudice. *First Rehearing Order* PP 1-3, JA 423-24. The Commission found that the waiver process, even with the changes the Commission had required, continued to grant too much discretion to the Southwest Board. *Id.* P 50, JA 443. Though Southwest had revised its proposal to limit the grounds for the Board's decision to approve or deny a waiver, the Board still would have significant discretion because the tariff would not require approval of a request that met all the criteria, nor would it preclude approval of a request that did not. *Id.* P 51, JA 443. In addition, the proposal would allow the Board to rely on one benefit metric in one case and another metric in another case, with the

potential for disparate treatment of similar requests.  *Id.* P 52, JA 444.

For these reasons, the Board's discretion could result in arbitrary and

inconsistent — i.e., unduly discriminatory — outcomes.  *Id.* PP 49, 52,

JA 442-44.  Therefore, the Commission found that Southwest had not

met its burden, under Federal Power Act section 205, 16 U.S.C. § 824d,

to show that the proposed process would result in cost allocation

outcomes that are just and reasonable, and not unduly discriminatory

or preferential.

On further rehearing, the Commission reaffirmed its

determination that Southwest's proposed process gave the Board too

much discretion, with the potential for unduly discriminatory or

preferential outcomes.  *Second Rehearing Order*, PP 29, 32, 37, 41

JA 496, 499, 501-02, 503-04.  The Commission also explained that it

properly reversed its initial acceptance of Southwest's proposal and that

its conclusion was consistent with Commission precedent.  *Id.* PP 29-31,

JA 496-99.

Sunflower and Midwest jointly submitted a request for agency

rehearing of the *First Rehearing Order* (R. 57, JA 448); each

subsequently filed a petition for review of the *First Rehearing Order*

(*Sunflower*, No. 23-1264; *Midwest*, No. 23-1287) and a petition for review of the *Second Rehearing Order* (*Midwest*, No. 24-1032; *Sunflower*, No. 24-1033), all of which the Court consolidated.

## D. The Subsequent Proceeding:  Southwest's Alternative Proposal and the 2024 *Allocation Order*

In November 2022, shortly after the Commission's initial acceptance of Southwest's revised proposal in the *Tariff Order*, Petitioner Sunflower applied for full regional allocation of the costs of four Byway facilities.  *See Allocation Order* P 7, JA 555; *see also* Pet. Br. 3 (noting that Sunflower's was the only waiver request submitted); Int. Br. 24, 30 (same).  Before Southwest completed its review under the waiver process, the Commission reversed its decision in the *First Rehearing Order*.  *See Allocation Order* P 7, JA 556.

In March 2024, Southwest filed proposed tariff revisions that would allow prospective regionwide cost allocation for those specific facilities.  *See* Submission of Tariff Revisions to Allocate Remaining ATRR for Byway Upgrades at 18, *Sw. Power Pool, Inc.*, FERC Docket No. ER24-1583 (filed Mar. 20, 2024), JA 509, 526 (2024 Southwest Filing) (the four Sunflower Byway facilities included in the filing "are the same facilities" as in Sunflower's previous waiver application).

20

Southwest explained that its filing would have limited applicability because "only Sunflower" had filed for a waiver, Southwest "is not aware of any other Byway Facilities currently allocated under the [Southwest] Tariff that would qualify" for regionwide cost allocation, and Southwest "does not foresee another future filing similar to" this proposed reallocation. *Id.* at 38, JA 546.

On May 31, 2024, after Sunflower and Midwest filed their opening brief in these consolidated cases, the Commission accepted Southwest's proposal in the *Allocation Order*.[4]  (Intervenors discussed the *Allocation Order* in their opening brief.  Int. Br. 30.)  The Commission found — based on the capacity, flow, and benefit analyses that Sunflower had submitted to Southwest, and that Southwest in turn submitted in support of its tariff filing — that the facilities "provide benefits to the

---

[4]     Three parties filed rehearing requests on July 1, 2024; those requests were deemed denied by operation of law and may be subject to petitions for judicial review.  *See Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc) (Commission order may be deemed denied by operation of law where Commission does not act on a rehearing request within 30 days).  The Commission, however, issued a notice stating that it will issue a further order addressing the rehearing requests.  Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, *Sw. Power Pool, Inc.*, 188 FERC ¶ 62,057 (Aug. 1, 2024).

[Southwest] region as a whole" (*Allocation Order* P 49, JA 569), and that regionwide allocation "adheres to the cost causation principle" that costs must be allocated "at least roughly commensurate with benefits" (*id.* P 56, JA 572).

No Commissioner dissented from the *Allocation Order*; one Commissioner concurred in the result.  JA 574.

Several parties filed requests for agency rehearing, which remain pending; therefore, that separate proceeding is not yet final, as the Commission may "affirm, modify, or set aside [its] order in whole or in part" on rehearing.  Federal Power Act § 313(b), 16 U.S.C. § 825*l*(b). (Because the Commission did not issue a substantive order within 30 days after receiving those rehearing requests, they may be deemed denied and any party that sought rehearing may seek judicial review by the end of September.)

## SUMMARY OF ARGUMENT

First, neither Sunflower nor Midwest has met its burden to establish that it has Article III standing because neither has demonstrated a cognizable injury connected to the orders on review.  In addition, Sunflower's challenge is now moot because the Commission

has, in a recent related proceeding, approved regionwide cost reallocation for the same (and only) Byway facilities for which Sunflower sought a waiver.  At a minimum, these cases should be held in abeyance for later coordination with that related proceeding.

On the merits, this case concerns the Commission's responsibility under the Federal Power Act to ensure that electric transmission costs, like all rates, are not only "just and reasonable" under the Act, but also not unduly discriminatory or preferential.  In the orders on review, the Commission rejected Southwest's proposed waiver process for reallocating certain transmission costs because the Commission reasonably found the proposal did not meet that standard.  Specifically, because the proposal (1) gave Southwest's Board of Directors too much discretion to grant or deny reallocation requests and (2) provided insufficient transparency as to the Board's decisionmaking, the Commission concluded that the process could result in unduly discriminatory or preferential outcomes.

Though the Commission initially accepted the proposed process, the Commission appropriately reconsidered its determination on agency rehearing and explained its reasons for the change.  In addition, the

Commission explained why it did not consider whether Southwest's existing cost allocation methodology remains just and reasonable.

## ARGUMENT

I. **NEITHER PETITIONER HAS DEMONSTRATED THAT THIS COURT HAS JURISDICTION TO CONSIDER ITS CHALLENGES TO THE *2023 REHEARING ORDERS***

Section 313(b) of the Federal Power Act provides that "[a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding" may seek judicial review of such order. 16 U.S.C. § 825*l*(b).  Of course, it is not enough that a petitioner participated in the underlying Commission proceedings.  *See N.Y. Reg'l Interconnect, Inc. v. FERC*, 634 F.3d 581, 586 (D.C. Cir. 2011); *City of Orrville v. FERC*, 147 F.3d 979, 985 (D.C. Cir. 1998).  Parties are "aggrieved" under the Federal Power Act if they satisfy both the constitutional and prudential requirements for standing.  *See PNGTS Shippers' Grp. v. FERC*, 592 F.3d 132, 136 (D.C. Cir. 2010).  These Petitioners, however, allege no basis for standing beyond their participation in Southwest's stakeholder process and the underlying Commission proceeding.  Pet. Br. 29.

The "irreducible constitutional minimum of standing contains three elements":  (1) a concrete and particularized injury; (2) a causal

24

connection between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Bennett v. Spear*, 520 U.S. 154, 167 (1997); *PNGTS*, 592 F.3d at 136.  The burden of establishing standing falls on the petitioner.  *See Texas v. EPA*, 726 F.3d 180, 198 (D.C. Cir. 2013) (petitioner must "aver[] facts in its opening brief establishing these elements") (citing *Sierra Club v. EPA*, 292 F.3d 895, 899-901 (D.C. Cir. 2002)); *PNGTS*, 592 F.3d at 137; *Antero Res. Corp. v. FERC*, No. 22-1278, 2024 WL 194189, at *3 (D.C. Cir. Jan. 18, 2024) ("Petitioners were required to establish standing in their opening brief, but they did not do so.").  In this case, both Petitioners have failed to proffer even bare allegations of requisite injury.  Moreover, neither Petitioner could do so.

First, Petitioner Sunflower's challenge to the *2023 Rehearing Orders* fails on either standing or mootness.  As explained *supra* pp. 20-22, the Commission has recently approved, in the 2024 *Allocation Order*, regionwide cost allocation for four of Sunflower's Byway facilities — the only facilities for which Southwest received any application during the eight-month period between the Commission's

25

acceptance of the waiver process in the October 2022 *Tariff Order* and its reversal in the July 2023 *First Rehearing Order*. Therefore, even if Sunflower had sufficiently alleged a cognizable injury based on the Commission's rejection of a waiver process that might have resulted in regionwide cost allocation for its Byway facilities, Sunflower could not establish that the injury is redressable in this case. Sunflower has already obtained the very same — and the only — regionwide cost allocation it could have obtained through the waiver process: granting the petition and reversing the Commission's rejection of Southwest's proposed waiver process "would not make a whit of difference to [Sunflower's] case, and thus is not an available Article III remedy." *Fore River Residents Against the Compressor Station v. FERC*, 77 F.4th 882, 889 (D.C. Cir. 2023).

But even if Sunflower had standing at the beginning of this litigation, its challenge is now moot. "A case becomes moot when, among other things, the court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Id.* (cleaned up); *see also Shell Energy N. Am. (US), L.P. v. FERC*, 107 F.4th 981, 993 (D.C. Cir. 2024) (federal courts "are without authority to

26

render advisory opinions or to decide questions that cannot affect the rights of litigants in the case before them"; "A challenge becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (cleaned up).

(As noted *supra* p. 22, the 2024 *Allocation Order* is not yet final; several parties requested agency rehearing and the Commission may choose to modify or set aside the order. In addition, the *Allocation Order* may be subject to judicial review. Thus, if the Court does not dismiss Sunflower's petitions for lack of jurisdiction, the Commission submits that the petitions should, at a minimum, be held in abeyance pending the outcome of that agency proceeding for prudential reasons, allowing orderly coordination of any subsequent judicial review.[5] Because the parties, facts, and issues overlap, coordination and consolidation would serve the interests of judicial economy, and any delay in review on the merits would not harm any party.)

---

[5]    The Commission proposed to file a stand-alone motion to suspend briefing and to place these cases in abeyance pending the final outcome of that proceeding; Petitioners indicated that they would oppose such a motion.

For its part, Petitioner Midwest has not even claimed to have Byway facilities for which it might request regionwide cost allocation, or that could meet the applicable criteria, under the waiver process that the Commission rejected.  Notably, the 2024 Southwest Filing (at 38) stated that Southwest is not aware of any Byway facilities, other than the four Sunflower facilities, that would qualify for regionwide cost allocation; Southwest "does not foresee another future filing" for such allocation.  *See supra* pp. 20-21.

## II.    STANDARD OF REVIEW

The Court reviews FERC orders under the Administrative Procedure Act's deferential "arbitrary and capricious" standard.  *See* 5 U.S.C. § 706(2)(A); *Elec. Power Supply Ass'n*, 577 U.S. at 292.  "The 'scope of review under [that] standard is narrow.'"  *Elec. Power Supply Ass'n*, 577 U.S. at 292 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  "A court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives."  *Id.*  "Rather, the court must uphold a rule if the agency has 'examine[d] the relevant [considerations] and articulate[d] a satisfactory explanation for its action[,] including a

rational connection between the facts found and the choice made.'" *Id.*

(quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43) (alterations in

original); *see also FCC v. Prometheus Radio Project*, 592 U.S. 414, 423

(2021) ("deferential" arbitrary-and-capricious standard requires only

that agency action "be reasonable and reasonably explained").

The Commission is afforded "great deference in its rate decisions."

*Elec. Power Supply Ass'n*, 577 U.S. at 292. "Because ratemaking

involves complex industry analyses and difficult policy choices, the

court will be particularly deferential to the Commission's expertise."

*E. Tex. Elec. Co-op., Inc. v. FERC*, 90 F.4th 579, 587 (D.C. Cir. 2024)

(cleaned up); *see also South Carolina*, 762 F.3d at 55 ("[I]n rate-related

matters, the court's review of the Commission's determinations is

particularly deferential because such matters are either fairly technical

or involve policy judgments that lie at the core of the regulatory

mission.") (cleaned up). In particular, "FERC has wide discretion to

determine what constitutes undue discrimination." *Mo. River Energy

Servs. v. FERC*, 918 F.3d 954, 958 (D.C. Cir. 2019) (cleaned up). This

Court also defers to the Commission's reasonable interpretations of its

own precedents. *Green Dev., LLC v. FERC*, 77 F.4th 997, 1003 (D.C.

Cir. 2023); *La. Pub. Serv. Comm'n v. FERC*, 10 F.4th 839, 845 (D.C. Cir. 2021).[6]

The Commission's factual findings are conclusive if supported by substantial evidence. Federal Power Act § 313(b), 16 U.S.C. § 825*l*(b). The substantial evidence standard "requires more than a scintilla," but can be satisfied by something "less than a preponderance" of the evidence. *South Carolina*, 762 F.3d at 54 (internal quotation marks and citations omitted). If the evidence is susceptible of more than one

---

[6]     In their opening brief (Pet. Br. 33 n.5), Petitioners "preserve[d] all arguments that may arise from the resolution" of then-pending challenges to *Chevron* deference in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). But the *Loper Bright* decision is not relevant to this case, as the 2023 *Rehearing Orders* do not rest on statutory interpretation. That said, the Supreme Court noted that "Congress has often enacted" statutes delegating discretionary authority to agencies and that terms such as "reasonable" provide "flexibility." 144 S. Ct. at 2263 (citation omitted); *see also Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 884 (D.C. Cir. 2024) ("Parts of the United States Code are notoriously short on details. . . . What can FERC allow companies to charge for electricity transmission? Rates that are 'just and reasonable.' 16 U.S.C. § 824d(a)."); *cf. Morgan Stanley*, 554 U.S. at 532 ("The statutory requirement [of the Federal Power Act] that rates be 'just and reasonable' is obviously incapable of precise judicial definition, and we afford great deference to the Commission in its rate decisions.") (citing cases).

rational interpretation, the Court must uphold the agency's findings. *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010) ("[W]e do not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the Commission's ultimate decision.").

## III.  THE COMMISSION REASONABLY REJECTED SOUTHWEST'S PROPOSED WAIVER PROCESS

Both the Petitioners and their supporting Intervenors focus on cost causation principles, arguing that the Commission improperly rejected a cost allocation proposal that was just and reasonable and consistent with principles of cost causation.  Pet. Br. 27-41; Int. Br. 31-34.  But they disregard a fundamental requirement of the Federal Power Act, and the actual basis for the Commission's decision:  Even if a cost allocation method is just and reasonable, the Commission cannot accept it without *also* finding that it is not unduly discriminatory and preferential.  16 U.S.C. § 824d; *supra* p. 5; *see Transmission Agency of N. Cal. v. FERC*, 628 F.3d 538, 549 (D.C. Cir. 2010) ("In filing a revision to a tariff, the public utility bears the ultimate burden of demonstrating that the rate is not unduly discriminatory."); *cf. Assoc. Gas Distribs.*,

31

824 F.2d at 998 (the statute "fairly bristles with concern for undue discrimination," prohibiting any "undue preference" and empowering the Commission to reject tariffs violating that prohibition). And that is where the Commission found that Southwest's proposal fell short.

**A.    The Commission reasonably found that Southwest had not shown that its proposed waiver process was not unduly discriminatory or preferential.**

**1.    The Commission reasonably found that the proposed waiver process afforded too much discretion to Southwest's Board of Directors.**

In the challenged orders, the Commission reasonably concluded that Southwest's revised waiver process continued to give the Board too much discretion in reallocating costs. *See First Rehearing Order* P 50, JA 443. In particular, the Commission found that the proposed tariff language, even after further revisions, "[did] not require the Board to approve a reallocation request if the criteria [were] met." *Id.* P 51, JA 443. Petitioners contend (Br. 44) that the Commission ignored the relevant language that limits the grounds for the Board's decision to whether all three of the Capacity, Flow, and Benefit Criteria are satisfied (*see* JA 361). The Commission recognized that Southwest had added language that "limit[ed] the basis" for the Board's decision, but the Commission correctly explained that the language did not

32

affirmatively require the Board to approve a reallocation where Southwest staff had determined that all three criteria were met. *First Rehearing Order* P 51, JA 443; *accord Second Rehearing Order* P 29, JA 496 (tariff "did not require the Board to reach specific results if certain criteria are satisfied"). That degree of flexibility, together with a lack of transparency as to the basis for the Board's decision (*see infra* pp. 37-39), still "create[d] the opportunity for arbitrary and inconsistent outcomes." *First Rehearing Order* P 52, JA 443.

To be clear: The Commission did not, in any of the orders, suggest that Southwest *would* make arbitrary decisions or treat similarly situated applicants differently. But the Commission appropriately held that, to meet its burden under Federal Power Act, Southwest's proposal must include objective criteria and limitations on discretion that do not allow a "potential for disparate treatment" (*First Rehearing Order* P 52, JA 444) or "unduly discriminatory or preferential outcomes" (*Second Rehearing Order* P 29, JA 496).

The Commission's finding that the proposed process gave too much discretion to the Southwest Board does not, as Petitioners and Intervenors contend (Pet. Br. 49-50; Int. Br. 35-36), conflict with the

Commission's well-established reliance on regional system operators. Under FERC Order No. 1000 (*see supra* pp. 9-10), a regional operator such as Southwest has considerable discretion in identifying regional and interregional transmission needs and selecting transmission facilities to meet those needs. *See Second Rehearing Order* P 30 n.55, JA 497 (quoting discussions of operator discretion in Order No. 1000); *First Rehearing Order* P 54 n.92, JA 445 (citing transmission planning provisions in Southwest's tariff). But Order No. 1000 also requires that cost allocation methods for those transmission facilities must be transparent and known in advance. *Second Rehearing Order* P 30 n.56, JA 497 (citing Order No. 1000 PP 560, 562).

Here, however, operator discretion is in tension with the principle of *ex ante* cost allocation. The proposed waiver process would empower Southwest's Board to change the cost allocation method for *existing* transmission facilities — projects that were planned and even constructed as Byway facilities but would have their costs reallocated later. *See 2022 Tariff Order* P 10, JA 310-11; *First Rehearing Order* P 54, JA 444-45. Both Petitioners (Br. 52) and Intervenors (Br. 36) brush off the Commission's explanation as a "non sequitur" — but they

34

miss the Commission's point.  The principle of *ex ante* cost allocation is

vitally important because it enables transmission developers to plan

facilities more efficiently and cost-effectively, and stakeholders to

evaluate prospective transmission facilities and the costs that may be

allocated widely.  *See supra* p. 10.  Reallocating the costs of already-

planned Byway facilities would "reduce the certainty as to the cost

allocation" of *any* potential Byway facilities.  *Second Rehearing Order*

P 30, JA 498.  That impact on certainty raised the stakes of a

discretionary process and thus the Commission's caution in this case.

*See id.* PP 30-31, JA 497-99.

The Commission also adequately distinguished its concerns about

Southwest's proposal from other waivers the Commission has

previously accepted in Southwest's tariff.  First, Sunflower and Midwest

(Pet. Br. 50) point to the Transformer Waiver Process, which allows the

costs of dual-voltage transmission facilities at specific interconnections

between higher- and lower-voltage systems to be allocated as higher-

voltage facilities.  *See First Rehearing Order* P 13 n.31, JA 429.  The

Commission explained that the potential scope of that waiver — and

the potential uncertainty — was constrained by the particular type of

35

facilities and their limited potential locations. *See id.* P 53, JA 444 (the standards for the waiver "are by their nature relatively binary" — that is, a facility either is or is not dual-voltage — "and apply only to a limited group of facilities").

Similarly, Southwest's Base Plan Upgrade Waiver Process (*see* Pet. Br. 54) allows costs of certain network upgrades, identified in a particular process for evaluating transmission service requests, to be reallocated regionally. *See Second Rehearing Order* P 31, JA 498. Here, too, the Commission distinguished the waiver as "limited in scope." *Second Rehearing Order* P 33, JA 499 ("we find it appropriate to consider the scope of facilities subject to reallocation, among other factors"). *Cf. 2021 Rejection Order* P 41, JA 34 (likewise explaining the Base Plan Upgrade waiver process and Transformer Waiver process as "not comparable" to the proposed Byway waiver because the proposed Byway allocation process "would be notably more expansive," so insufficient clarity and transparency would "make[] it difficult to determine" the extent of transmission costs that would be allocated regionwide). The Commission also explained that the network upgrades eligible for that waiver are not subject to the Order No. 1000

36

requirement of *ex ante* cost allocation. *Second Rehearing Order* P 31, JA 498-99.

### 2. The Commission reasonably found that the proposed waiver process lacked sufficient transparency.

Moreover, the Commission explained that its concerns about the extent of the Board's discretion "are elevated here" because, under the proposed process, "the Board does not set out its decision to grant or deny" a reallocation request. *Second Rehearing Order* P 32, JA 499. As with *ex ante* cost allocation, the need for transparency is a key principle in Order No. 1000. *See, e.g.*, Order No. 1000 PP 668-69 (cost allocation method and metrics "must be transparent with adequate documentation to allow a stakeholder to determine how they were applied"), *quoted in 2021 Rejection Order* P 40 n.75, JA 33; *see generally South Carolina*, 762 F.3d at 51 (Commission had found that lack of transparency in transmission planning had resulted in opportunities for undue discrimination) (citing various sections of Order No. 1000).

The Commission had found that the first waiver proposal lacked transparency because it did not provide for Southwest's staff,

37

committees, and Board to document and explain their evaluation of a request and recommendations for approval or denial. *2021 Rejection Order* P 40, JA 33. Absent such documentation, the process would not "provide predictable guidance as to which requests will be approved and on what grounds." *Id.*, JA 34. As to the revised proposal, the Commission initially concluded that the revised proposal, which required more written analyses and recommendations at various steps, provided such transparency. *See 2022 Tariff Order* PP 52, 56, JA 328, 330. On rehearing, however, the Commission reasonably found that transparency was still lacking because the decisionmaker at the end of the process — the Board of Directors — would not be required to explain its decision to grant or deny a request: "Without such particulars, stakeholders will be unable to discern whether the . . . Board has applied the criteria" in a nondiscriminatory manner. *Second Rehearing Order* P 32, JA 499.

Petitioners point out that Southwest's Board votes in secret, in accordance with its rules, and argue that the Commission improperly attacked the Board's practices. Pet. Br. 46-48. The Commission, however, noted that the Board's governance and procedures were "not

at issue" and that the Commission did not "suggest any deficiency." *Second Rehearing Order* P 32 n.62, JA 499. Here, again, the Commission focused not on the Board's conduct, but on whether waiver decisions would be explained, for all stakeholders to see how and why a decision has been made and to understand how other decisions would be made. *See id.* P 32, JA 499.

**B.    The Commission appropriately explained why it changed its determination on rehearing.**

Both Petitioners and Intervenors argue that the Commission's decision to set aside the 2022 *Tariff Order* was improper. Pet. Br. 42-49; Int. Br. 39-40. But it is entirely appropriate for the Commission to reverse its decision, so long as it explains its reasoning. *Second Rehearing Order* P 29, JA496; *Ass'n of Oil Pipe Lines v. FERC*, 876 F.3d 336, 342 (D.C. Cir. 2017) ("Where an agency's action marks a change in position, the agency must display awareness that it is changing position and show that there are good reasons" for its new position) (cleaned up); *see also*, *e.g.*, *N.Y. State Pub. Serv. Comm'n v. FERC*, 104 F.4th 886, 891 (D.C. Cir. 2024) (affirming Commission's rehearing order, notwithstanding the agency's "eyebrow-raising" change of position five months after its previous order and the Court's usual skepticism of such

39

"flip-flops").  Indeed, the very purpose of the rehearing provision in the Federal Power Act is to afford the Commission the opportunity to reconsider its decision.  *See* 16 U.S.C. § 825*l*(b) (Commission has the "power . . . to abrogate or modify its order" on rehearing and, until it files the record with a reviewing court, may "modify or set aside, in whole or in part, any finding or order" it has made or issued).  The Commission used its opportunity to reconsider its initial (conditional) acceptance of Southwest's proposal exactly as the statute provides.

Moreover, the Commission need not establish that its new position is superior to the position it reversed.  *Second Rehearing Order* P 29, JA 496; *cf. Ass'n of Oil Pipe Lines*, 876 F.3d at 342 (Commission can change its policy without showing that the reasons for the new policy are better).  Of course, here the Commission's "new" position was not entirely new — having already rejected an earlier iteration of the proposed waiver process, the Commission required modifications to address its continuing concerns even when it initially accepted the revised process.  *See 2022 Tariff Order* PP 54-55, JA 329-330.  And when it rejected each proposal, the Commission did so without prejudice to further filings, never foreclosing the possibility that Southwest could

40

develop a proposal that would meet its burden.  *2021 Rejection Order*

P 42, JA 35; *First Rehearing Order* PP 2-3, JA 424.  Nevertheless, in

reconsidering its analysis, and ultimately setting aside its earlier order,

the Commission took seriously its responsibility under the Federal

Power Act.  *See MISO Transmission Owners v. FERC*, 45 F.4th 248, 264

(D.C. Cir. 2022) (faulting the Commission for "fail[ing] to reckon with

its own serious concerns":  "An agency ignoring its own qualms is not

reasoned decisionmaking.").

## IV.    THE COMMISSION REASONABLY DID NOT CONSIDER, IN THIS PROCEEDING, WHETHER SOUTHWEST'S EXISTING COST ALLOCATION METHOD IS APPROPRIATE

Petitioners devote much of their argument to claiming that the

Commission "fail[ed] to abide by the cost-causation principle."  Pet.

Br. 32; *see also id.* at 4, 30-41.  But Petitioners rely on cases in which

the Commission had *approved* rate filings that violated cost

causation — not cases in which the Commission had rejected rate

filings that could be unduly discriminatory.  *See, e.g., Old Dominion*

*Elec. Coop. v. FERC*, 898 F.3d 1254 (D.C. Cir. 2018) (holding

Commission improperly approved an unreasonable cost allocation

proposal), *discussed in* Pet. Br. 32-33, 37-38 *and in* Int. Br. 33, 34;

41

*Consol. Edison Co. of N.Y., Inc. v. FERC*, 45 F.4th 265, 282-83 (D.C. Cir. 2022) (same), *cited in* Pet. Br. 38, 40.  (Petitioners also creatively assert that the Commission "re-impos[ed] a cost-allocation scheme" that is unjust and unreasonable.  Pet. Br. 38.  Of course, the Commission never changed Southwest's previously-approved cost allocation method for Byway facilities; it only accepted, then rejected, a new process for waiving that allocation method for some facilities.)

Petitioners (Br. 38-40) further contend that the Commission was obligated to exercise its authority under Federal Power Act section 206, 16 U.S.C. § 824e, to determine that Southwest's existing cost allocation method had become unjust and unreasonable.  Intervenors, on the other hand, assert that Southwest's methodology, "overall, remains just and reasonable."  Int. Br. 33.  And neither Petitioners nor any other party filed a complaint under section 206 to challenge the existing methodology.  Though the Commission has statutory authority to initiate a section 206 proceeding, its choice whether to do so is entirely within its discretion.  *Second Rehearing Order* P 43 & n.85, JA 505 (citing cases); *see Pub. Citizen, Inc. v. FERC*, 839 F.3d 1165, 1174 (D.C. Cir. 2016) ("the [Federal Power Act] did not compel FERC to either set

the disputed rates for hearing or affirmatively disapprove any unjust or unreasonable rates through the Section 205 process"); *Gen. Motors Corp. v. FERC*, 613 F.2d 939, 944 (D.C. Cir. 1979) ("In general, an administrative agency's decision to conduct or not to conduct an investigation is committed to the agency's discretion.").

Here, the Commission declined to initiate a section 206 proceeding and instead focused on evaluating Southwest's proposal under Federal Power Act section 205. *See Second Rehearing Order* P 43, JA 505 ("we are not persuaded . . . to exercise that discretion"); *cf. Advanced Energy Mgmt. All.*, 860 F.3d at 656 (Commission acting under section 205 "restricts itself to evaluating the confined proposal"); *supra* p. 6. (Petitioners correctly point out that the Commission can act under both sections 205 and 206 in the same proceeding, citing *Advanced Energy*, but in that case a system operator itself had submitted tariff revisions under both sections, for reasons particular to its filing authority under its operating agreement. The Commission did not initiate its own section 206 inquiry in that case.)

Even so, the Commission recognized that Southwest and its stakeholders were striving to develop a mechanism that could improve

43

the alignment of costs and benefits. *See Rejection Order* P 38, JA 32.

To that end, the Commission repeatedly encouraged Southwest to

continue its efforts, and it rejected Southwest's proposals without

prejudice. *See First Rehearing Order* PP 2-3, JA 424 (rejecting proposal

"without prejudice"); *see also 2021 Rejection Order* P 42, JA 35 ("[W]e

note that our rejection is without prejudice to [Southwest] filing a

revised proposal that remedies the identified deficiencies, and

encourage [Southwest's] continued efforts to proactively address these

issues."); *Second Rehearing Order*, JA 507-08 (Chairman Phillips and

Commissioner Clements concurring) (encouraging further efforts).

Indeed, even with its consistent concerns about transparency and

discriminatory potential, the Commission tried to resolve those

concerns when it conditionally accepted the revised proposal and

directed Southwest to make specific changes. *2022 Tariff Order* PP 1,

47, 54-55, JA 306, 325, 329-30. *Cf. NRG Power Mktg., LLC v. FERC*,

862 F.3d 108, 115 (D.C. Cir. 2017) ("Section 205 puts FERC in a 'passive

and reactive role.' . . . [T]here are limits on FERC's authority to propose

modifications under Section 205 . . . .") (citation omitted).

Moreover, when Southwest instead filed, for Commission approval, a proposed reallocation of the Sunflower Byway facilities' costs, the Commission *did* evaluate the alignment of costs with benefits and found the allocation to be "just and reasonable and not unduly discriminatory or preferential" and "consistent with the cost causation principle." *2024 Allocation Order* P 48, JA 568-69.

## CONCLUSION

For the reasons stated, the petitions for review should be dismissed for lack of jurisdiction; if not, the petitions should be denied on the merits and the challenged FERC orders should be affirmed.

Respectfully submitted,

Matthew R. Christiansen
General Counsel

Robert H. Solomon
Solicitor

*/s/ Carol J. Banta*
Carol J. Banta
Senior Attorney

Federal Energy Regulatory
  Commission
Washington, DC  20426
Tel.:  (202) 502-6433
carol.banta@ferc.gov

August 6, 2024
Final Brief:  October 24, 2024

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(a)(7)(C)(i), I certify that the Brief for Respondent has been prepared in a proportionally spaced typeface (using Microsoft Word, in 14-point Century Schoolbook) and contains 8,363 words, not including the tables of contents and authorities, the glossary, the certificates of counsel, and the addendum.

/s/ *Carol J. Banta*
Carol J. Banta
Senior Attorney

Federal Energy Regulatory
  Commission
Washington, DC  20426
Tel.:  (202) 502-6433

October 24, 2024

# ADDENDUM

## Statutes

# TABLE OF CONTENTS

**PAGE**

**Statutes**:

Administrative Procedure Act

5 U.S.C. § 706(2)(A) ................................................................ A1

Federal Power Act

Section 201, 16 U.S.C. § 824 ........................................... A2

Section 205, 16 U.S.C. § 824d ....................................... A5

Section 206, 16 U.S.C. § 824e ....................................... A7

Section 313, 16 U.S.C. § 825*l* ....................................... A10

to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392; Pub. L. 94–574, § 1, Oct. 21, 1976, 90 Stat. 2721.)

### HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| ............ | 5 U.S.C. 1009(b). | June 11, 1946, ch. 324, § 10(b), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

#### Editorial Notes

##### AMENDMENTS

1976—Pub. L. 94–574 provided that if no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer as defendant.

### § 704. Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392.)

### HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| ............ | 5 U.S.C. 1009(c). | June 11, 1946, ch. 324, § 10(c), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

### § 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

### HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| ............ | 5 U.S.C. 1009(d). | June 11, 1946, ch. 324, § 10(d), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

### § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

### HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| ............ | 5 U.S.C. 1009(e). | June 11, 1946, ch. 324, § 10(e), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

#### Statutory Notes and Related Subsidiaries

##### ABBREVIATION OF RECORD

Pub. L. 85–791, Aug. 28, 1958, 72 Stat. 941, which authorized abbreviation of record on review or enforcement of orders of administrative agencies and review on the original papers, provided, in section 35 thereof,

**(g) Qualifying criteria for closed-loop pumped storage projects**

**(1) In general**

The Commission shall establish criteria that a pumped storage project shall meet in order to qualify as a closed-loop pumped storage project eligible for the expedited process established under this section.

**(2) Inclusions**

In establishing the criteria under paragraph (1), the Commission shall include criteria requiring that the pumped storage project—

(A) cause little to no change to existing surface and ground water flows and uses; and

(B) is unlikely to adversely affect species listed as a threatened species or endangered species under the Endangered Species Act of 1973 [16 U.S.C. 1531 et seq.].

**(h) Savings clause**

Nothing in this section affects any authority of the Commission to license a closed-loop pumped storage project under this subchapter.

(June 10, 1920, ch. 285, pt. I, § 35, as added Pub. L. 115–270, title III, § 3004, Oct. 23, 2018, 132 Stat. 3865.)

### Editorial Notes

#### References in Text

The Fish and Wildlife Coordination Act, referred to in subsec. (c)(2), (3)(A), is act Mar. 10, 1934, ch. 55, 48 Stat. 401, which is classified generally to sections 661 to 666c–1 of this title. For complete classification of this Act to the Code, see section 661(a) of this title, Short Title note set out under section 661 of this title, and Tables.

The National Environmental Policy Act of 1969, referred to in subsec. (e), is Pub. L. 91–190, Jan. 1, 1970, 83 Stat. 852, which is classified generally to chapter 55 (§ 4321 et seq.) of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title note set out under section 4321 of Title 42 and Tables.

The Endangered Species Act of 1973, referred to in subsec. (g)(2)(B), is Pub. L. 93–205, Dec. 28, 1973, 87 Stat. 884, which is classified principally to chapter 35 (§ 1531 et seq.) of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1531 of this title and Tables.

**§ 823g. Considerations for relicensing terms**

**(a) In general**

In determining the term of a new license issued when an existing license under this subchapter expires, the Commission shall take into consideration, among other things—

(1) project-related investments by the licensee under the new license; and

(2) project-related investments by the licensee over the term of the existing license.

**(b) Equal weight**

The determination of the Commission under subsection (a) shall give equal weight to—

(1) investments by the licensee to implement the new license under this subchapter, including investments relating to redevelopment, new construction, new capacity, efficiency, modernization, rehabilitation or replacement of major equipment, safety improvements, or environmental, recreation, or other protection, mitigation, or enhancement measures required or authorized by the new license; and

(2) investments by the licensee over the term of the existing license (including any terms under annual licenses) that—

(A) resulted in redevelopment, new construction, new capacity, efficiency, modernization, rehabilitation or replacement of major equipment, safety improvements, or environmental, recreation, or other protection, mitigation, or enhancement measures conducted over the term of the existing license; and

(B) were not expressly considered by the Commission as contributing to the length of the existing license term in any order establishing or extending the existing license term.

**(c) Commission determination**

At the request of the licensee, the Commission shall make a determination as to whether any planned, ongoing, or completed investment meets the criteria under subsection (b)(2). Any determination under this subsection shall be issued within 60 days following receipt of the licensee's request. When issuing its determination under this subsection, the Commission shall not assess the incremental number of years that the investment may add to the new license term. All such assessment shall occur only as provided in subsection (a).

(June 10, 1920, ch. 285, pt. I, § 36, as added Pub. L. 115–270, title III, § 3005, Oct. 23, 2018, 132 Stat. 3867.)

SUBCHAPTER II—REGULATION OF ELECTRIC UTILITY COMPANIES ENGAGED IN INTERSTATE COMMERCE

**§ 824. Declaration of policy; application of subchapter**

**(a) Federal regulation of transmission and sale of electric energy**

It is declared that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest, and that Federal regulation of matters relating to generation to the extent provided in this subchapter and subchapter III of this chapter and of that part of such business which consists of the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce is necessary in the public interest, such Federal regulation, however, to extend only to those matters which are not subject to regulation by the States.

**(b) Use or sale of electric energy in interstate commerce**

(1) The provisions of this subchapter shall apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce, but except as provided in paragraph (2) shall not apply to any other sale of electric energy or deprive a State or State commission of its lawful authority now exercised over the exportation of hydroelectric energy which is transmitted

across a State line. The Commission shall have jurisdiction over all facilities for such transmission or sale of electric energy, but shall not have jurisdiction, except as specifically provided in this subchapter and subchapter III of this chapter, over facilities used for the generation of electric energy or over facilities used in local distribution or only for the transmission of electric energy in intrastate commerce, or over facilities for the transmission of electric energy consumed wholly by the transmitter.

(2) Notwithstanding subsection (f), the provisions of sections 824b(a)(2), 824e(e), 824i, 824j, 824j–1, 824k, 824o, 824o–1, 824p, 824q, 824r, 824s, 824t, 824u, and 824v of this title shall apply to the entities described in such provisions, and such entities shall be subject to the jurisdiction of the Commission for purposes of carrying out such provisions and for purposes of applying the enforcement authorities of this chapter with respect to such provisions. Compliance with any order or rule of the Commission under the provisions of section 824b(a)(2), 824e(e), 824i, 824j, 824j–1, 824k, 824o, 824o–1, 824p, 824q, 824r, 824s, 824t, 824u, or 824v of this title, shall not make an electric utility or other entity subject to the jurisdiction of the Commission for any purposes other than the purposes specified in the preceding sentence.

**(c) Electric energy in interstate commerce**

For the purpose of this subchapter, electric energy shall be held to be transmitted in interstate commerce if transmitted from a State and consumed at any point outside thereof; but only insofar as such transmission takes place within the United States.

**(d) "Sale of electric energy at wholesale" defined**

The term "sale of electric energy at wholesale" when used in this subchapter, means a sale of electric energy to any person for resale.

**(e) "Public utility" defined**

The term "public utility" when used in this subchapter and subchapter III of this chapter means any person who owns or operates facilities subject to the jurisdiction of the Commission under this subchapter (other than facilities subject to such jurisdiction solely by reason of section 824e(e), 824e(f),[1] 824i, 824j, 824j–1, 824k, 824o, 824o–1, 824p, 824q, 824r, 824s, 824t, 824u, or 824v of this title).

**(f) United States, State, political subdivision of a State, or agency or instrumentality thereof exempt**

No provision in this subchapter shall apply to, or be deemed to include, the United States, a State or any political subdivision of a State, an electric cooperative that receives financing under the Rural Electrification Act of 1936 (7 U.S.C. 901 et seq.) or that sells less than 4,000,000 megawatt hours of electricity per year, or any agency, authority, or instrumentality of any one or more of the foregoing, or any corporation which is wholly owned, directly or indirectly, by any one or more of the foregoing, or any officer, agent, or employee of any of the foregoing act-

ing as such in the course of his official duty, unless such provision makes specific reference thereto.

**(g) Books and records**

(1) Upon written order of a State commission, a State commission may examine the books, accounts, memoranda, contracts, and records of—

(A) an electric utility company subject to its regulatory authority under State law,

(B) any exempt wholesale generator selling energy at wholesale to such electric utility, and

(C) any electric utility company, or holding company thereof, which is an associate company or affiliate of an exempt wholesale generator which sells electric energy to an electric utility company referred to in subparagraph (A),

wherever located, if such examination is required for the effective discharge of the State commission's regulatory responsibilities affecting the provision of electric service.

(2) Where a State commission issues an order pursuant to paragraph (1), the State commission shall not publicly disclose trade secrets or sensitive commercial information.

(3) Any United States district court located in the State in which the State commission referred to in paragraph (1) is located shall have jurisdiction to enforce compliance with this subsection.

(4) Nothing in this section shall—

(A) preempt applicable State law concerning the provision of records and other information; or

(B) in any way limit rights to obtain records and other information under Federal law, contracts, or otherwise.

(5) As used in this subsection the terms "affiliate", "associate company", "electric utility company", "holding company", "subsidiary company", and "exempt wholesale generator" shall have the same meaning as when used in the Public Utility Holding Company Act of 2005 [42 U.S.C. 16451 et seq.].

(June 10, 1920, ch. 285, pt. II, § 201, as added Aug. 26, 1935, ch. 687, title II, § 213, 49 Stat. 847; amended Pub. L. 95–617, title II, § 204(b), Nov. 9, 1978, 92 Stat. 3140; Pub. L. 102–486, title VII, § 714, Oct. 24, 1992, 106 Stat. 2911; Pub. L. 109–58, title XII, §§ 1277(b)(1), 1291(c), 1295(a), Aug. 8, 2005, 119 Stat. 978, 985; Pub. L. 114–94, div. F, § 61003(b), Dec. 4, 2015, 129 Stat. 1778.)

### Editorial Notes

#### REFERENCES IN TEXT

The Rural Electrification Act of 1936, referred to in subsec. (f), is act May 20, 1936, ch. 432, 49 Stat. 1363, which is classified generally to chapter 31 (§ 901 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 901 of Title 7 and Tables.

The Public Utility Holding Company Act of 2005, referred to in subsec. (g)(5), is subtitle F of title XII of Pub. L. 109–58, Aug. 8, 2005, 119 Stat. 972, which is classified principally to part D (§ 16451 et seq.) of subchapter XII of chapter 149 of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see Short Title note set out under section 15801 of Title 42 and Tables.

---

[1] So in original. Section 824e of this title does not contain a subsec. (f).

AMENDMENTS

2015—Subsec. (b)(2). Pub. L. 114–94, §61003(b)(1), inserted "824*o*–1," after "824*o*," in two places.

Subsec. (e). Pub. L. 114–94, §61003(b)(2), inserted "824*o*–1," after "824*o*,".

2005—Subsec. (b)(2). Pub. L. 109–58, §1295(a)(1), substituted "Notwithstanding subsection (f), the provisions of sections 824b(a)(2), 824e(e), 824i, 824j, 824j–1, 824k, 824*o*, 824p, 824q, 824r, 824s, 824t, 824u, and 824v of this title" for "The provisions of sections 824i, 824j, and 824k of this title" and "Compliance with any order or rule of the Commission under the provisions of section 824b(a)(2), 824e(e), 824i, 824j, 824j–1, 824k, 824*o*, 824p, 824q, 824r, 824s, 824t, 824u, or 824v of this title" for "Compliance with any order of the Commission under the provisions of section 824i or 824j of this title".

Subsec. (e). Pub. L. 109–58, §1295(a)(2), substituted "section 824e(e), 824t(f), 824i, 824j, 824j–1, 824k, 824*o*, 824p, 824q, 824r, 824s, 824t, 824u, or 824v of this title" for "section 824i, 824j, or 824k of this title, and sale of electric energy".

Subsec. (f). Pub. L. 109–58, §1291(c), which directed amendment of subsec. (f) by substituting "political subdivision of a State, an electric cooperative that receives financing under the Rural Electrification Act of 1936 (7 U.S.C. 901 et seq.) or that sells less than 4,000,000 megawatt hours of electricity per year," for "political subdivision of a state,", was executed by making the substitution for "political subdivision of a State," to reflect the probable intent of Congress.

Subsec. (g)(5). Pub. L. 109–58, §1277(b)(1), substituted "2005" for "1935".

1992—Subsec. (g). Pub. L. 102–486 added subsec. (g).

1978—Subsec. (b). Pub. L. 95–617, §204(b)(1), designated existing provisions as par. (1), inserted "except as provided in paragraph (2)" after "in interstate commerce, but", and added par. (2).

Subsec. (e). Pub. L. 95–617, §204(b)(2), inserted "(other than facilities subject to such jurisdiction solely by reason of section 824i, 824j, or 824k of this title)" after "under this subchapter".

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by section 1277(b)(1) of Pub. L. 109–58 effective 6 months after Aug. 8, 2005, with provisions relating to effect of compliance with certain regulations approved and made effective prior to such date, see section 1274 of Pub. L. 109–58, set out as an Effective Date note under section 16451 of Title 42, The Public Health and Welfare.

STATE AUTHORITIES; CONSTRUCTION

Nothing in amendment by Pub. L. 102–486 to be construed as affecting or intending to affect, or in any way to interfere with, authority of any State or local government relating to environmental protection or siting of facilities, see section 731 of Pub. L. 102–486, set out as a note under section 796 of this title.

PRIOR ACTIONS; EFFECT ON OTHER AUTHORITIES

Pub. L. 95–617, title II, §214, Nov. 9, 1978, 92 Stat. 3149, provided that:

"(a) PRIOR ACTIONS.—No provision of this title [enacting sections 823a, 824i to 824k, 824a–1 to 824a–3 and 825q–1 of this title, amending sections 796, 824, 824a, 824d, and 825d of this title and enacting provisions set out as notes under sections 824a, 824d, and 825d of this title] or of any amendment made by this title shall apply to, or affect, any action taken by the Commission [Federal Energy Regulatory Commission] before the date of the enactment of this Act [Nov. 9, 1978].

"(b) OTHER AUTHORITIES.—No provision of this title [enacting sections 823a, 824i to 824k, 824a–1 to 824a–3 and 825q–1 of this title, amending sections 796, 824, 824a, 824d, and 825d of this title and enacting provisions set out as notes under sections 824a, 824d, and 825d of this title] or of any amendment made by this title shall

limit, impair or otherwise affect any authority of the Commission or any other agency or instrumentality of the United States under any other provision of law except as specifically provided in this title."

## § 824a. Interconnection and coordination of facilities; emergencies; transmission to foreign countries

### (a) Regional districts; establishment; notice to State commissions

For the purpose of assuring an abundant supply of electric energy throughout the United States with the greatest possible economy and with regard to the proper utilization and conservation of natural resources, the Commission is empowered and directed to divide the country into regional districts for the voluntary interconnection and coordination of facilities for the generation, transmission, and sale of electric energy, and it may at any time thereafter, upon its own motion or upon application, make such modifications thereof as in its judgment will promote the public interest. Each such district shall embrace an area which, in the judgment of the Commission, can economically be served by such interconnection and coordinated electric facilities. It shall be the duty of the Commission to promote and encourage such interconnection and coordination within each such district and between such districts. Before establishing any such district and fixing or modifying the boundaries thereof the Commission shall give notice to the State commission of each State situated wholly or in part within such district, and shall afford each such State commission reasonable opportunity to present its views and recommendations, and shall receive and consider such views and recommendations.

### (b) Sale or exchange of energy; establishing physical connections

Whenever the Commission, upon application of any State commission or of any person engaged in the transmission or sale of electric energy, and after notice to each State commission and public utility affected and after opportunity for hearing, finds such action necessary or appropriate in the public interest it may by order direct a public utility (if the Commission finds that no undue burden will be placed upon such public utility thereby) to establish physical connection of its transmission facilities with the facilities of one or more other persons engaged in the transmission or sale of electric energy, to sell energy to or exchange energy with such persons: *Provided*, That the Commission shall have no authority to compel the enlargement of generating facilities for such purposes, nor to compel such public utility to sell or exchange energy when to do so would impair its ability to render adequate service to its customers. The Commission may prescribe the terms and conditions of the arrangement to be made between the persons affected by any such order, including the apportionment of cost between them and the compensation or reimbursement reasonably due to any of them.

### (c) Temporary connection and exchange of facilities during emergency

(1) During the continuance of any war in which the United States is engaged, or whenever

mental orders in the premises as it may find necessary or appropriate, and may by any such supplemental order modify the provisions of any previous order as to the particular purposes, uses, and extent to which, or the conditions under which, any security so theretofore authorized or the proceeds thereof may be applied, subject always to the requirements of subsection (a) of this section.

**(c) Compliance with order of Commission**

No public utility shall, without the consent of the Commission, apply any security or any proceeds thereof to any purpose not specified in the Commission's order, or supplemental order, or to any purpose in excess of the amount allowed for such purpose in such order, or otherwise in contravention of such order.

**(d) Authorization of capitalization not to exceed amount paid**

The Commission shall not authorize the capitalization of the right to be a corporation or of any franchise, permit, or contract for consolidation, merger, or lease in excess of the amount (exclusive of any tax or annual charge) actually paid as the consideration for such right, franchise, permit, or contract.

**(e) Notes or drafts maturing less than one year after issuance**

Subsection (a) shall not apply to the issue or renewal of, or assumption of liability on, a note or draft maturing not more than one year after the date of such issue, renewal, or assumption of liability, and aggregating (together with all other then outstanding notes and drafts of a maturity of one year or less on which such public utility is primarily or secondarily liable) not more than 5 per centum of the par value of the other securities of the public utility then outstanding. In the case of securities having no par value, the par value for the purpose of this subsection shall be the fair market value as of the date of issue. Within ten days after any such issue, renewal, or assumption of liability, the public utility shall file with the Commission a certificate of notification, in such form as may be prescribed by the Commission, setting forth such matters as the Commission shall by regulation require.

**(f) Public utility securities regulated by State not affected**

The provisions of this section shall not extend to a public utility organized and operating in a State under the laws of which its security issues are regulated by a State commission.

**(g) Guarantee or obligation on part of United States**

Nothing in this section shall be construed to imply any guarantee or obligation on the part of the United States in respect of any securities to which the provisions of this section relate.

**(h) Filing duplicate reports with the Securities and Exchange Commission**

Any public utility whose security issues are approved by the Commission under this section may file with the Securities and Exchange Commission duplicate copies of reports filed with the Federal Power Commission in lieu of the reports, information, and documents required under sections 77g, 78l, and 78m of title 15.

(June 10, 1920, ch. 285, pt. II, § 204, as added Aug. 26, 1935, ch. 687, title II, § 213, 49 Stat. 850.)

**Executive Documents**

TRANSFER OF FUNCTIONS

Executive and administrative functions of Securities and Exchange Commission, with certain exceptions, transferred to Chairman of such Commission, with authority vested in him to authorize their performance by any officer, employee, or administrative unit under his jurisdiction, by Reorg. Plan No. 10 of 1950, §§ 1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out in the Appendix to Title 5, Government Organization and Employees.

**§ 824d. Rates and charges; schedules; suspension of new rates; automatic adjustment clauses**

**(a) Just and reasonable rates**

All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.

**(b) Preference or advantage unlawful**

No public utility shall, with respect to any transmission or sale subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.

**(c) Schedules**

Under such rules and regulations as the Commission may prescribe, every public utility shall file with the Commission, within such time and in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.

**(d) Notice required for rate changes**

Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after sixty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the sixty days' notice herein pro-

vided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

**(e) Suspension of new rates; hearings; five-month period**

Whenever any such new schedule is filed the Commission shall have authority, either upon complaint or upon its own initiative without complaint, at once, and, if it so orders, without answer or formal pleading by the public utility, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the public utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of such five months, the proposed change of rate, charge, classification, or service shall go into effect at the end of such period, but in case of a proposed increased rate or charge, the Commission may by order require the interested public utility or public utilities to keep accurate account in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts are paid, and upon completion of the hearing and decision may by further order require such public utility or public utilities to refund, with interest, to the persons in whose behalf such amounts were paid, such portion of such increased rates or charges as by its decision shall be found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the public utility, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible.

**(f) Review of automatic adjustment clauses and public utility practices; action by Commission; "automatic adjustment clause" defined**

(1) Not later than 2 years after November 9, 1978, and not less often than every 4 years thereafter, the Commission shall make a thorough review of automatic adjustment clauses in public utility rate schedules to examine—

(A) whether or not each such clause effectively provides incentives for efficient use of resources (including economical purchase and use of fuel and electric energy), and

(B) whether any such clause reflects any costs other than costs which are—

(i) subject to periodic fluctuations and

(ii) not susceptible to precise determinations in rate cases prior to the time such costs are incurred.

Such review may take place in individual rate proceedings or in generic or other separate proceedings applicable to one or more utilities.

(2) Not less frequently than every 2 years, in rate proceedings or in generic or other separate proceedings, the Commission shall review, with respect to each public utility, practices under any automatic adjustment clauses of such utility to insure efficient use of resources (including economical purchase and use of fuel and electric energy) under such clauses.

(3) The Commission may, on its own motion or upon complaint, after an opportunity for an evidentiary hearing, order a public utility to—

(A) modify the terms and provisions of any automatic adjustment clause, or

(B) cease any practice in connection with the clause,

if such clause or practice does not result in the economical purchase and use of fuel, electric energy, or other items, the cost of which is included in any rate schedule under an automatic adjustment clause.

(4) As used in this subsection, the term "automatic adjustment clause" means a provision of a rate schedule which provides for increases or decreases (or both), without prior hearing, in rates reflecting increases or decreases (or both) in costs incurred by an electric utility. Such term does not include any rate which takes effect subject to refund and subject to a later determination of the appropriate amount of such rate.

**(g) Inaction of Commissioners**

**(1) In general**

With respect to a change described in subsection (d), if the Commission permits the 60-day period established therein to expire without issuing an order accepting or denying the change because the Commissioners are divided two against two as to the lawfulness of the change, as a result of vacancy, incapacity, or recusal on the Commission, or if the Commission lacks a quorum—

(A) the failure to issue an order accepting or denying the change by the Commission shall be considered to be an order issued by the Commission accepting the change for purposes of section 825*l*(a) of this title; and

(B) each Commissioner shall add to the record of the Commission a written statement explaining the views of the Commissioner with respect to the change.

**(2) Appeal**

If, pursuant to this subsection, a person seeks a rehearing under section 825*l* of this title, and the Commission fails to act on the merits of the rehearing request by the date that is 30 days after the date of the rehearing request because the Commissioners are divided two against two, as a result of vacancy, incapacity, or recusal on the Commission, or if the Commission lacks a quorum, such person may appeal under section 825*l*(b) of this title.

(June 10, 1920, ch. 285, pt. II, §205, as added Aug. 26, 1935, ch. 687, title II, §213, 49 Stat. 851; amended Pub. L. 95–617, title II, §§207(a), 208, Nov. 9, 1978, 92 Stat. 3142; Pub. L. 115–270, title III, §3006, Oct. 23, 2018, 132 Stat. 3868.)

## Editorial Notes

### AMENDMENTS

2018—Subsec. (g). Pub. L. 115–270 added subsec. (g).
1978—Subsec. (d). Pub. L. 95–617, §207(a), substituted "sixty" for "thirty" in two places.
Subsec. (f). Pub. L. 95–617, §208, added subsec. (f).

### Statutory Notes and Related Subsidiaries

#### STUDY OF ELECTRIC RATE INCREASES UNDER FEDERAL POWER ACT

Section 207(b) of Pub. L. 95–617 directed chairman of Federal Energy Regulatory Commission, in consultation with Secretary, to conduct a study of legal requirements and administrative procedures involved in consideration and resolution of proposed wholesale electric rate increases under Federal Power Act, section 791a et seq. of this title, for purposes of providing for expeditious handling of hearings consistent with due process, preventing imposition of successive rate increases before they have been determined by Commission to be just and reasonable and otherwise lawful, and improving procedures designed to prohibit anticompetitive or unreasonable differences in wholesale and retail rates, or both, and that chairman report to Congress within nine months from Nov. 9, 1978, on results of study, on administrative actions taken as a result of this study, and on any recommendations for changes in existing law that will aid purposes of this section.

## § 824e. Power of Commission to fix rates and charges; determination of cost of production or transmission

### (a) Unjust or preferential rates, etc.; statement of reasons for changes; hearing; specification of issues

Whenever the Commission, after a hearing held upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order. Any complaint or motion of the Commission to initiate a proceeding under this section shall state the change or changes to be made in the rate, charge, classification, rule, regulation, practice, or contract then in force, and the reasons for any proposed change or changes therein. If, after review of any motion or complaint and answer, the Commission shall decide to hold a hearing, it shall fix by order the time and place of such hearing and shall specify the issues to be adjudicated.

### (b) Refund effective date; preferential proceedings; statement of reasons for delay; burden of proof; scope of refund order; refund orders in cases of dilatory behavior; interest

Whenever the Commission institutes a proceeding under this section, the Commission shall establish a refund effective date. In the case of a proceeding instituted on complaint, the refund effective date shall not be earlier than the date of the filing of such complaint nor later than 5 months after the filing of such complaint. In the case of a proceeding instituted by the Commission on its own motion, the refund effective date shall not be earlier than the date of the publication by the Commission of notice of its intention to initiate such proceeding nor later than 5 months after the publication date. Upon institution of a proceeding under this section, the Commission shall give to the decision of such proceeding the same preference as provided under section 824d of this title and otherwise act as speedily as possible. If no final decision is rendered by the conclusion of the 180-day period commencing upon initiation of a proceeding pursuant to this section, the Commission shall state the reasons why it has failed to do so and shall state its best estimate as to when it reasonably expects to make such decision. In any proceeding under this section, the burden of proof to show that any rate, charge, classification, rule, regulation, practice, or contract is unjust, unreasonable, unduly discriminatory, or preferential shall be upon the Commission or the complainant. At the conclusion of any proceeding under this section, the Commission may order refunds of any amounts paid, for the period subsequent to the refund effective date through a date fifteen months after such refund effective date, in excess of those which would have been paid under the just and reasonable rate, charge, classification, rule, regulation, practice, or contract which the Commission orders to be thereafter observed and in force: *Provided*, That if the proceeding is not concluded within fifteen months after the refund effective date and if the Commission determines at the conclusion of the proceeding that the proceeding was not resolved within the fifteen-month period primarily because of dilatory behavior by the public utility, the Commission may order refunds of any or all amounts paid for the period subsequent to the refund effective date and prior to the conclusion of the proceeding. The refunds shall be made, with interest, to those persons who have paid those rates or charges which are the subject of the proceeding.

### (c) Refund considerations; shifting costs; reduction in revenues; "electric utility companies" and "registered holding company" defined

Notwithstanding subsection (b), in a proceeding commenced under this section involving two or more electric utility companies of a registered holding company, refunds which might otherwise be payable under subsection (b) shall not be ordered to the extent that such refunds would result from any portion of a Commission order that (1) requires a decrease in system production or transmission costs to be paid by one or more of such electric companies; and (2) is based upon a determination that the amount of such decrease should be paid through an increase in the costs to be paid by other electric utility companies of such registered holding company: *Provided*, That refunds, in whole or in part, may be ordered by the Commission if it determines that the registered holding company would not experience any reduction in revenues which results from an inability of an electric

utility company of the holding company to recover such increase in costs for the period between the refund effective date and the effective date of the Commission's order. For purposes of this subsection, the terms "electric utility companies" and "registered holding company" shall have the same meanings as provided in the Public Utility Holding Company Act of 1935, as amended.[1]

**(d) Investigation of costs**

The Commission upon its own motion, or upon the request of any State commission whenever it can do so without prejudice to the efficient and proper conduct of its affairs, may investigate and determine the cost of the production or transmission of electric energy by means of facilities under the jurisdiction of the Commission in cases where the Commission has no authority to establish a rate governing the sale of such energy.

**(e) Short-term sales**

(1) In this subsection:

(A) The term "short-term sale" means an agreement for the sale of electric energy at wholesale in interstate commerce that is for a period of 31 days or less (excluding monthly contracts subject to automatic renewal).

(B) The term "applicable Commission rule" means a Commission rule applicable to sales at wholesale by public utilities that the Commission determines after notice and comment should also be applicable to entities subject to this subsection.

(2) If an entity described in section 824(f) of this title voluntarily makes a short-term sale of electric energy through an organized market in which the rates for the sale are established by Commission-approved tariff (rather than by contract) and the sale violates the terms of the tariff or applicable Commission rules in effect at the time of the sale, the entity shall be subject to the refund authority of the Commission under this section with respect to the violation.

(3) This section shall not apply to—

(A) any entity that sells in total (including affiliates of the entity) less than 8,000,000 megawatt hours of electricity per year; or

(B) an electric cooperative.

(4)(A) The Commission shall have refund authority under paragraph (2) with respect to a voluntary short term sale of electric energy by the Bonneville Power Administration only if the sale is at an unjust and unreasonable rate.

(B) The Commission may order a refund under subparagraph (A) only for short-term sales made by the Bonneville Power Administration at rates that are higher than the highest just and reasonable rate charged by any other entity for a short-term sale of electric energy in the same geographic market for the same, or most nearly comparable, period as the sale by the Bonneville Power Administration.

(C) In the case of any Federal power marketing agency or the Tennessee Valley Authority, the Commission shall not assert or exercise any regulatory authority or power under paragraph (2) other than the ordering of refunds to achieve a just and reasonable rate.

---

[1] See References in Text note below.

(June 10, 1920, ch. 285, pt. II, §206, as added Aug. 26, 1935, ch. 687, title II, §213, 49 Stat. 852; amended Pub. L. 100–473, §2, Oct. 6, 1988, 102 Stat. 2299; Pub. L. 109–58, title XII, §§1285, 1286, 1295(b), Aug. 8, 2005, 119 Stat. 980, 981, 985.)

#### Editorial Notes

##### References in Text

The Public Utility Holding Company Act of 1935, referred to in subsec. (c), is title I of act Aug. 26, 1935, ch. 687, 49 Stat. 803, which was classified generally to chapter 2C (§79 et seq.) of Title 15, Commerce and Trade, prior to repeal by Pub. L. 109–58, title XII, §1263, Aug. 8, 2005, 119 Stat. 974. For complete classification of this Act to the Code, see Tables.

##### Amendments

2005—Subsec. (a). Pub. L. 109–58, §1295(b)(1), substituted "hearing held" for "hearing had" in first sentence.

Subsec. (b). Pub. L. 109–58, §1295(b)(2), struck out "the public utility to make" before "refunds of any amounts paid" in seventh sentence.

Pub. L. 109–58, §1285, in second sentence, substituted "the date of the filing of such complaint nor later than 5 months after the filing of such complaint" for "the date 60 days after the filing of such complaint nor later than 5 months after the expiration of such 60-day period", in third sentence, substituted "the date of the publication" for "the date 60 days after the publication" and "5 months after the publication date" for "5 months after the expiration of such 60-day period", and in fifth sentence, substituted "If no final decision is rendered by the conclusion of the 180-day period commencing upon initiation of a proceeding pursuant to this section, the Commission shall state the reasons why it has failed to do so and shall state its best estimate as to when it reasonably expects to make such decision" for "If no final decision is rendered by the refund effective date or by the conclusion of the 180-day period commencing upon initiation of a proceeding pursuant to this section, whichever is earlier, the Commission shall state the reasons why it has failed to do so and shall state its best estimate as to when it reasonably expects to make such decision".

Subsec. (e). Pub. L. 109–58, §1286, added subsec. (e).

1988—Subsec. (a). Pub. L. 100–473, §2(1), inserted provisions for a statement of reasons for listed changes, hearings, and specification of issues.

Subsecs. (b) to (d). Pub. L. 100–473, §2(2), added subsecs. (b) and (c) and redesignated former subsec. (b) as (d).

#### Statutory Notes and Related Subsidiaries

##### Effective Date of 1988 Amendment

Pub. L. 100–473, §4, Oct. 6, 1988, 102 Stat. 2300, provided that: "The amendments made by this Act [amending this section] are not applicable to complaints filed or motions initiated before the date of enactment of this Act [Oct. 6, 1988] pursuant to section 206 of the Federal Power Act [this section]: *Provided, however,* That such complaints may be withdrawn and refiled without prejudice."

##### Limitation on Authority Provided

Pub. L. 100–473, §3, Oct. 6, 1988, 102 Stat. 2300, provided that: "Nothing in subsection (c) of section 206 of the Federal Power Act, as amended (16 U.S.C. 824c(c)) shall be interpreted to confer upon the Federal Energy Regulatory Commission any authority not granted to it elsewhere in such Act [16 U.S.C. 791a et seq.] to issue an order that (1) requires a decrease in system production or transmission costs to be paid by one or more electric utility companies of a registered holding company; and (2) is based upon a determination that the amount of such decrease should be paid through an increase in the

costs to be paid by other electric utility companies of such registered holding company. For purposes of this section, the terms 'electric utility companies' and 'registered holding company' shall have the same meanings as provided in the Public Utility Holding Company Act of 1935, as amended [15 U.S.C. 79 et seq.].''

STUDY

Pub. L. 100–473, § 5, Oct. 6, 1988, 102 Stat. 2301, directed that, no earlier than three years and no later than four years after Oct. 6, 1988, Federal Energy Regulatory Commission perform a study of effect of amendments to this section, analyzing (1) impact, if any, of such amendments on cost of capital paid by public utilities, (2) any change in average time taken to resolve proceedings under this section, and (3) such other matters as Commission may deem appropriate in public interest, with study to be sent to Committee on Energy and Natural Resources of Senate and Committee on Energy and Commerce of House of Representatives.

## § 824f. Ordering furnishing of adequate service

Whenever the Commission, upon complaint of a State commission, after notice to each State commission and public utility affected and after opportunity for hearing, shall find that any interstate service of any public utility is inadequate or insufficient, the Commission shall determine the proper, adequate, or sufficient service to be furnished, and shall fix the same by its order, rule, or regulation: *Provided,* That the Commission shall have no authority to compel the enlargement of generating facilities for such purposes, nor to compel the public utility to sell or exchange energy when to do so would impair its ability to render adequate service to its customers.

(June 10, 1920, ch. 285, pt. II, § 207, as added Aug. 26, 1935, ch. 687, title II, § 213, 49 Stat. 853.)

## § 824g. Ascertainment of cost of property and depreciation

### (a) Investigation of property costs

The Commission may investigate and ascertain the actual legitimate cost of the property of every public utility, the depreciation therein, and, when found necessary for rate-making purposes, other facts which bear on the determination of such cost or depreciation, and the fair value of such property.

### (b) Request for inventory and cost statements

Every public utility upon request shall file with the Commission an inventory of all or any part of its property and a statement of the original cost thereof, and shall keep the Commission informed regarding the cost of all additions, betterments, extensions, and new construction.

(June 10, 1920, ch. 285, pt. II, § 208, as added Aug. 26, 1935, ch. 687, title II, § 213, 49 Stat. 853.)

## § 824h. References to State boards by Commission

### (a) Composition of boards; force and effect of proceedings

The Commission may refer any matter arising in the administration of this subchapter to a board to be composed of a member or members, as determined by the Commission, from the State or each of the States affected or to be affected by such matter. Any such board shall be vested with the same power and be subject to the same duties and liabilities as in the case of a member of the Commission when designated by the Commission to hold any hearings. The action of such board shall have such force and effect and its proceedings shall be conducted in such manner as the Commission shall by regulations prescribe. The board shall be appointed by the Commission from persons nominated by the State commission of each State affected or by the Governor of such State if there is no State commission. Each State affected shall be entitled to the same number of representatives on the board unless the nominating power of such State waives such right. The Commission shall have discretion to reject the nominee from any State, but shall thereupon invite a new nomination from that State. The members of a board shall receive such allowances for expenses as the Commission shall provide. The Commission may, when in its discretion sufficient reason exists therefor, revoke any reference to such a board.

### (b) Cooperation with State commissions

The Commission may confer with any State commission regarding the relationship between rate structures, costs, accounts, charges, practices, classifications, and regulations of public utilities subject to the jurisdiction of such State commission and of the Commission; and the Commission is authorized, under such rules and regulations as it shall prescribe, to hold joint hearings with any State commission in connection with any matter with respect to which the Commission is authorized to act. The Commission is authorized in the administration of this chapter to avail itself of such cooperation, services, records, and facilities as may be afforded by any State commission.

### (c) Availability of information and reports to State commissions; Commission experts

The Commission shall make available to the several State commissions such information and reports as may be of assistance in State regulation of public utilities. Whenever the Commission can do so without prejudice to the efficient and proper conduct of its affairs, it may upon request from a State make available to such State as witnesses any of its trained rate, valuation, or other experts, subject to reimbursement to the Commission by such State of the compensation and traveling expenses of such witnesses. All sums collected hereunder shall be credited to the appropriation from which the amounts were expended in carrying out the provisions of this subsection.

(June 10, 1920, ch. 285, pt. II, § 209, as added Aug. 26, 1935, ch. 687, title II, § 213, 49 Stat. 853.)

## § 824i. Interconnection authority

### (a) Powers of Commission; application by State regulatory authority

(1) Upon application of any electric utility, Federal power marketing agency, geothermal power producer (including a producer which is not an electric utility), qualifying cogenerator, or qualifying small power producer, the Commission may issue an order requiring—

(A) the physical connection of any cogeneration facility, any small power production fa-

ices. The amounts collected under this section shall be deposited in the Treasury to the credit of miscellaneous receipts. All printing for the Federal Power Commission making use of engraving, lithography, and photolithography, together with the plates for the same, shall be contracted for and performed under the direction of the Commission, under such limitations and conditions as the Joint Committee on Printing may from time to time prescribe, and all other printing for the Commission shall be done by the Director of the Government Publishing Office under such limitations and conditions as the Joint Committee on Printing may from time to time prescribe. The entire work may be done at, or ordered through, the Government Publishing Office whenever, in the judgment of the Joint Committee on Printing, the same would be to the interest of the Government: *Provided*, That when the exigencies of the public service so require, the Joint Committee on Printing may authorize the Commission to make immediate contracts for engraving, lithographing, and photolithographing, without advertisement for proposals: *Provided further*, That nothing contained in this chapter or any other Act shall prevent the Federal Power Commission from placing orders with other departments or establishments for engraving, lithographing, and photolithographing, in accordance with the provisions of sections 1535 and 1536 of title 31, providing for interdepartmental work.

(June 10, 1920, ch. 285, pt. III, §312, as added Aug. 26, 1935, ch. 687, title II, §213, 49 Stat. 859; amended Pub. L. 113–235, div. H, title I, §1301(b), (d), Dec. 16, 2014, 128 Stat. 2537.)

#### Editorial Notes

##### CODIFICATION

"Sections 1535 and 1536 of title 31" substituted in text for "sections 601 and 602 of the Act of June 30, 1932 (47 Stat. 417 [31 U.S.C. 686, 686b])" on authority of Pub. L. 97–258, §4(b), Sept. 13, 1982, 96 Stat. 1067, the first section of which enacted Title 31, Money and Finance.

#### Statutory Notes and Related Subsidiaries

##### CHANGE OF NAME

"Director of the Government Publishing Office" substituted for "Public Printer" in text on authority of section 1301(d) of Pub. L. 113–235, set out as a note under section 301 of Title 44, Public Printing and Documents.

"Government Publishing Office" substituted for "Government Printing Office" in text on authority of section 1301(b) of Pub. L. 113–235, set out as a note preceding section 301 of Title 44, Public Printing and Documents.

## § 825*l*. Review of orders

### (a) Application for rehearing; time periods; modification of order

Any person, electric utility, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, electric utility, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such ap-

plication is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. No proceeding to review any order of the Commission shall be brought by any entity unless such entity shall have made application to the Commission for a rehearing thereon. Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

### (b) Judicial review

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be transmitted by the clerk of the court to any member of the Commission and thereupon the Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of title 28. Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings which, if supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States

upon certiorari or certification as provided in section 1254 of title 28.

**(c) Stay of Commission's order**

The filing of an application for rehearing under subsection (a) shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under subsection (b) of this section shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

(June 10, 1920, ch. 285, pt. III, §313, as added Aug. 26, 1935, ch. 687, title II, §213, 49 Stat. 860; amended June 25, 1948, ch. 646, §32(a), 62 Stat. 991; May 24, 1949, ch. 139, §127, 63 Stat. 107; Pub. L. 85–791, §16, Aug. 28, 1958, 72 Stat. 947; Pub. L. 109–58, title XII, §1284(c), Aug. 8, 2005, 119 Stat. 980.)

#### Editorial Notes

##### CODIFICATION

In subsec. (b), "section 1254 of title 28" substituted for "sections 239 and 240 of the Judicial Code, as amended (U.S.C., title 28, secs. 346 and 347)" on authority of act June 25, 1948, ch. 646, 62 Stat. 869, the first section of which enacted Title 28, Judiciary and Judicial Procedure.

##### AMENDMENTS

2005—Subsec. (a). Pub. L. 109–58 inserted "electric utility," after "Any person," and "to which such person," and substituted "brought by any entity unless such entity" for "brought by any person unless such person".

1958—Subsec. (a). Pub. L. 85–791, §16(a), inserted sentence to provide that Commission may modify or set aside findings or orders until record has been filed in court of appeals.

Subsec. (b). Pub. L. 85–791, §16(b), in second sentence, substituted "transmitted by the clerk of the court to" for "served upon", substituted "file with the court" for "certify and file with the court a transcript of", and inserted "as provided in section 2112 of title 28", and in third sentence, substituted "jurisdiction, which upon the filing of the record with it shall be exclusive" for "exclusive jurisdiction".

#### Statutory Notes and Related Subsidiaries

##### CHANGE OF NAME

Act June 25, 1948, eff. Sept. 1, 1948, as amended by act May 24, 1949, substituted "court of appeals" for "circuit court of appeals".

### § 825m. Enforcement provisions

**(a) Enjoining and restraining violations**

Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule, regulation, or order thereunder, it may in its discretion bring an action in the proper District Court of the United States or the United States courts of any Territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices and to enforce compliance with this chapter or any rule, regulation, or order thereunder, and upon a proper showing a permanent or temporary injunction or decree or restraining order shall be granted without bond. The Commission may transmit such evidence as may be available

concerning such acts or practices to the Attorney General, who, in his discretion, may institute the necessary criminal proceedings under this chapter.

**(b) Writs of mandamus**

Upon application of the Commission the district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have jurisdiction to issue writs of mandamus commanding any person to comply with the provisions of this chapter or any rule, regulation, or order of the Commission thereunder.

**(c) Employment of attorneys**

The Commission may employ such attorneys as it finds necessary for proper legal aid and service of the Commission or its members in the conduct of their work, or for proper representation of the public interests in investigations made by it or cases or proceedings pending before it, whether at the Commission's own instance or upon complaint, or to appear for or represent the Commission in any case in court; and the expenses of such employment shall be paid out of the appropriation for the Commission.

**(d) Prohibitions on violators**

In any proceedings under subsection (a), the court may prohibit, conditionally or unconditionally, and permanently or for such period of time as the court determines, any individual who is engaged or has engaged in practices constituting a violation of section 824u of this title (and related rules and regulations) from—

(1) acting as an officer or director of an electric utility; or

(2) engaging in the business of purchasing or selling—

(A) electric energy; or

(B) transmission services subject to the jurisdiction of the Commission.

(June 10, 1920, ch. 285, pt. III, §314, as added Aug. 26, 1935, ch. 687, title II, §213, 49 Stat. 861; amended June 25, 1936, ch. 804, 49 Stat. 1921; June 25, 1948, ch. 646, §32(b), 62 Stat. 991; May 24, 1949, ch. 139, §127, 63 Stat. 107; Pub. L. 109–58, title XII, §1288, Aug. 8, 2005, 119 Stat. 982.)

#### Editorial Notes

##### CODIFICATION

As originally enacted subsecs. (a) and (b) contained references to the Supreme Court of the District of Columbia. Act June 25, 1936, substituted "the district court of the United States for the District of Columbia" for "the Supreme Court of the District of Columbia", and act June 25, 1948, as amended by act May 24, 1949, substituted "United States District Court for the District of Columbia" for "district court of the United States for the District of Columbia". However, the words "United States District Court for the District of Columbia" have been deleted entirely as superfluous in view of section 132(a) of Title 28, Judiciary and Judicial Procedure, which states that "There shall be in each judicial district a district court which shall be a court of record known as the United States District Court for the district", and section 88 of Title 28 which states that "the District of Columbia constitutes one judicial district".

##### AMENDMENTS

2005—Subsec. (d). Pub. L. 109–58 added subsec. (d).

# CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d) and the Court's Administrative

Order Regarding Electronic Case Filing, I hereby certify that I have, this 24th day

of October 2024, served the foregoing via email through the Court's CM/ECF

system.

*/s/ Carol J. Banta*
Carol J. Banta
Senior Attorney

Federal Energy Regulatory
  Commission
888 First Street, NE
Washington, DC  20426
Tel.:  (202) 502-6433
Email:  carol.banta@ferc.gov